**Gilbert L. TEW, Jr., and Virginia K. Tew, Plaintiffs,**

v.

**SUN OIL COMPANY, Sun Gas Company, Inc., Sunmark Industries, Inc., Sun Oil Company of Pennsylvania and Sun Petroleum Products Company, Inc., Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted July 24, 1979.

Decided Sept. 13, 1979.

S. Bernard Ableman and Henry E. Gallagher, Jr., of Connolly, Bove & Lodge, Wilmington, for plaintiffs.

James W. Semple, of Flanzer & Isaacs, Wilmington, for defendants.

O'HARA, Judge.

This is a personal injury action for damages allegedly resulting from defendants' failure to properly maintain an asphalt loading apparatus. Plaintiff Gilbert L. Tew, Jr. ("Tew"), was employed by Artic Roofing, Inc. as a truck driver, and sustained injuries at defendants' refinery in Marcus Hook, Pennsylvania. Defendants have moved for summary judgment, contending that Tew assumed the risk of injury by knowingly continuing to operate the loading apparatus.

It appears from the record that Tew, who frequently loaded asphalt at defendant's facility, was well aware of the potentially

unsafe condition of the loading "rack". The device involved is a large overhead rack, designed to propel liquid asphalt into the top of large trucks. According to Tew's deposition testimony, it was necessary to stand on the truck to physically manipulate the apparatus. Reading the evidence to favor the non-moving party, it appears that the loading device was quite difficult to operate when not adequately greased, and that the lack of such maintenance was common. Tew had experienced prior difficulties with the device and had submitted complaint slips according to defendants' company policy. However, remedial action, if taken, was only temporary.

Tew had also complained to his boss at Artic, who required that the (loading) job be completed regardless and suggested the complaint slip procedure. Protests from Tew were greeted by an ultimatum instructing him to do the job or find another. With respect to job alternatives, Tew had owned and, for a time, run independently his own truck. However, at the time of injury he was well satisfied financially with the asphalt-hauling job.

This factual background sets up a narrow issue: whether, as a matter of law, an individual who faces a known dangerous condition rather than risk loss of his job can be said to have *voluntarily* assumed the risk of injury.

### CHOICE OF LAW

A preliminary question is raised by the briefs as to whether Pennsylvania or Delaware law should govern the determination of the issue here. Plaintiffs have relied on Pennsylvania law, while defendants indicate that there is no substantial difference between the states on this question.

■ Delaware has traditionally favored the *lex loci delicti* rule over the "most significant relationship" rule in tort actions. *Friday v. Smoot*, Del.Supr., 211 A.2d 594 (1965). Under this theory, the law of the jurisdiction where a tort takes place (here, Pennsylvania), governs the substantive rights of the parties in an action based on the tort brought in Delaware. *Id.* See also

*Hopkins v. Chesapeake Utilities Corp.*, Del. Super., 290 A.2d 4 (1972). I do not believe that the apparent use of the "relationship" test of the *Restatement* in *Oliver B. Cannon and Son v. Dorr-Oliver*, Del.Supr., 394 A.2d 1160 (1978), indicates a departure from this rule. See Restatement of the Law, Second, *Conflict of Laws*, § 188. That case involved a *contract* dispute arising over property located in Delaware, where two of the four parties were Delaware corporations. In the present case, the alleged injuries and alleged negligence of defendants occurred in Pennsylvania. Two of the defendants are Pennsylvania corporations. Only Tew and his employer at the time of the accident (not a party) have Delaware contacts.

■ Clearly, if the *lex loci* rule retains vitality, Pennsylvania law should govern here. This would also seem to be the result under the *Restatement*. See § 145. In particular, § 165 indicates that as to assumption of risk, the applicable law will usually be the local law of the state where the injury occurred. In this case, Pennsylvania law will be applied with respect to the substantive issue of assumption of risk.

■ Of course, matters of procedure will be governed by the law of Delaware, the forum state. *Connell v. Delaware Aircraft Industries, Inc.*, Del.Super., 55 A.2d 637 (1947). Thus, in passing on defendants' motion for summary judgment, the record must be read in a light most favorable to the non-moving plaintiffs. *Smith v. Berwin Builders, Inc.*, Del.Super., 287 A.2d 693 (1972). Summary judgment can be granted only if the Court can say that on the unquestioned facts the moving party is entitled to judgment as a matter of law. *Klebanoff v. Ponsall*, Del.Super., 290 A.2d 668, aff'd. Del.Supr., 299 A.2d 431 (1972). If from the evidence produced there is some reasonable indication that a material fact is in dispute, or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law, summary judgment will not be granted. *Ebersole v. Lowengrub*, Del.Supr., 180 A.2d 467 (1962). Here, the burden of proof is borne by the defendants.

## VOLUNTARY ASSUMPTION

Pennsylvania law on the voluntariness of assumption of risk in the context of economic duress has recently been analyzed in *Draper v. Airco, Inc.*, 3rd Cir., 580 F.2d 91 (1978). In that case the plaintiff, an electrician, died while installing a switch on an energized power line. The trial judge instructed the jury that plaintiff did *not* voluntarily assume the risk of injury if he undertook the work in fear of dismissal or fear of economic hardship resulting from a refusal. Upon review of the Pennsylvania cases, the Circuit Court found this to be a proper prediction of the course of Pennsylvania law.

"One who undertakes a dangerous work task for fear of being fired if he or she refuses can hardly be said to have undertaken the risk voluntarily. To hold that economic duress of this sort does not vitiate the voluntariness of an assumption of risk would not only ignore reality but would also greatly decrease the likelihood of employees' obtaining just compensation in cases such as this." 580 F.2d at 102.

In reaching its conclusion the Court relied on *Ferraro v. Ford Motor Co.*, 423 Pa. 324, 223 A.2d 746 (1966), a products liability action in which the Court ruled that only voluntary and *unreasonable* use of a product known to be defective would constitute a defense in an action based on Restatement, Second, *Torts*, § 402A (1965). There is no indication in *Ferraro* of an intent to extend this rule beyond the products liability context. Also relied on in *Draper* is an exception found in Pennsylvania cases to the general rule that one who ventures into a dark area is guilty of contributory negligence, the exception applying in cases of "compelling necessity".

Finally, the Court analyzed the *Restatement* view. According to Restatement, Second, *Torts*, § 496E, a plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct. Defendants argue that comment b. applies here:

"The plaintiff's acceptance of the risk is to be regarded as voluntary even though he is acting under the compulsion of circumstances, *not created by the tortious conduct of the defendant,* which have left him no reasonable alternative. Where the defendant is under no independent duty to the plaintiff, and the plaintiff finds himself confronted by a choice of risks, or is driven by his own necessities to accept a danger, the situation is not to be charged against the defendant." (Emphasis added).

In this case (as in *Draper*), however, the Court must assume that defendants were under an independent duty to plaintiffs, and that defendants' alleged negligence contributed to the circumstances tending to negate voluntary action. Where there is evidence that plaintiff may have faced dismissal for failure to proceed in the face of defendants' negligent maintenance, comment c. applies:

"The plaintiff's acceptance of risk is not to be regarded as voluntary where the defendant's tortious conduct has forced upon him a choice of courses of conduct, which leaves him no reasonable alternative to taking his chances. A defendant who, by his own wrong, has compelled the plaintiff to choose between two evils cannot be permitted to say that the plaintiff is barred from recovery because he has made the choice. Therefore, where the defendant is under a duty to the plaintiff, and his breach of duty compels the plaintiff to encounter the particular risk in order to avert other harm to himself, his acceptance of the risk is not voluntary, and he is not barred from recovery. * * The existence of an alternative course of conduct which would avert the harm, or protect the right or privilege, does not make the plaintiff's choice voluntary, if the alternative is one which he cannot reasonably be required to accept."

The Court believes that, despite the valid criticisms which can be made of

the *Draper* decision *, it remains a reasonable evaluation of Pennsylvania law as it applies to this question. Therefore, defendants' motion must be denied in the face of factual questions as to the voluntariness of plaintiff's assumption of the risk which must await resolution at trial.

IT IS SO ORDERED.

---

* For example, defendants, although agreeing generally that Pennsylvania and Delaware law are identical, took exception to the holding in the *Draper* case and its predecessor, *Hennigan v. Atlantic Refining Company*, E.D.Pa., 282 F.Supp. 667 (1967) as being contrary to Pennsylvania law and going considerably beyond Delaware cases.