**APARTMENT SPECIALISTS,
INC., Plaintiff,**

v.

**PUROLATOR COURIER
CORP., Defendant.**

**Civ. A. No. 85–0969.**

United States District Court,
District of Columbia.

Jan. 3, 1986.

---

John Sherlock, Washington, D.C., for plaintiff.

Peter A. Greene, Washington, D.C., for defendant.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

The plaintiff charges the defendant with breach of contract, negligence, and alleges that the contract was unconscionable and that plaintiff entered into the contract due to fraud, misrepresentation and detrimental reliance.[1] The case is now before the Court on defendant's motion for summary judgment.

### I

The underlying facts are as follows: The plaintiff is engaged in the manufacture and installation of commercial draperies and depends for a substantial part of its business on Federal Supply Schedule contracts let by the United States government pursuant to the Federal Property and Administrative Services Act of 1949, which is codified in various titles of the United States Code. Plaintiff alleges that it was a successful bidder under the Federal Supply Schedule for each of the four years prior to 1983 and received orders totaling 1.5 million dollars

---

**1.** In its original complaint filed on March 22, 1985, the plaintiff alleged only breach of contract. On September 20, 1985, after the defendant had moved for summary judgment, the plaintiff filed an amended complaint to assert the additional claims.

on contracts awarded as the result of a 1982 solicitation.

On or about October 13, 1983, the United States General Services Administration (GSA) Procurement Division published a Notice of Solicitation Number BO/FS–K–00454(n) for the provision of draperies, drapery hardware, bedspreads and for optional measuring and installation services. In order to be considered for the solicitation, bids were to be received by GSA's Procurement Division in Boston, Massachusetts, no later than 4:30 p.m. (Eastern Standard Time) January 12, 1984. On January 11, 1984, between 10:00 a.m. and 11:00 a.m. (Pacific Standard Time) the defendant's messenger picked up the bid package for the subject solicitation from the plaintiff's Los Angeles offices for delivery to GSA in Boston. Plaintiff alleges in its complaint[2] that the box containing the bid package was clearly marked as a bid and bore the date and time of the bid opening.[3] Plaintiff contends that a representative of the defendant was informed, prior to defendant's acceptance of the package, that the package contained a government bid and that it was essential that the package be delivered to GSA in Boston no later than 4:30 p.m. January 12, 1984. The package was marked as "Urgent" and "Rush". Unknown to the plaintiff, it had snowed in Boston on January 10, 1984, and January 11, 1984.[4] The defendant did not advise the plaintiff that the delivery of the package might be delayed because the defendant was experiencing difficulties with its Boston operations which it attributed to the adverse weather conditions in the Boston area. The package was not delivered until January 13, 1984 at 9:20 a.m. and as a result, the bid was not accepted by GSA. It is not clear when the package actually arrived in Boston, but it is conceded by the defendant that the package was sent to the Purolator office in Boston and, from that office, was delivered to GSA which is within two blocks of the defendant's Boston address.

## II

■ The question of an air carriers' limitations of liability is governed by federal law. *See First Pennsylvania Bank v. Eastern Airlines, Inc.,* 731 F.2d 1113 (3d Cir.1984); *Ragsdale v. Airborne Freight Corp.,* 173 Ga.App. 48, 325 S.E.2d 428 (1985).

At the time the package was delivered to the defendant, the parties executed a written contract of carriage, Bill of Lading (bill) No. 18363998, which was signed by Stan Nathanson on behalf of the plaintiff and by defendant's carrier guard. The bill is addressed to the General Services Administration in Boston and indicates that it is from the plaintiff in Los Angeles. In the item provided for the declared value of the contents of the package there appears the figure "0". The plaintiff contends that "0" was written in by the defendant's agent. Directly under the signature of Mr. Nathanson is a statement which reads "NEGOTIABLE BILL OF LADING SUBJECT TO CONDITIONS OF CONTRACT SET FORTH ON REVERSE SIDE OF SHIPPER'S COPY". There is also a block for the "description of contents", however, that block is blank. There is also on the front side of the bill a notation "unless greater value is declared hereon, the shipper hereby agrees and declares that the value of the property described herein is released to a value as specified on the reverse side of the shipper's copy." On the reverse side of the bill, there is a statement with respect to the limitation of liability

---

**2.** "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading". Fed.R.Civ.P. 56(e).

**3.** At oral argument counsel appeared to agree that, while the bid package may have been clearly marked, that package was enclosed in a Purolator package which was not clearly marked as a bid. Nor was there any reference on the Bill of Lading that the package contained a bid.

**4.** Incorrectly stated in the complaint as January 10, 1985 and January 11, 1985. See First Amended Complaint ¶ 19.

which also includes a statement that, "[i]n no event will Purolator be liable for special or consequential damages including but not limited to loss of profits or income. In case of the loss or damage of a shipment with a number of pieces, the value of the shipment will be prorated over the number of pieces." The bill also provides that "[d]ue to the nature of the business, Purolator cannot guarantee delivery by a stipulated date or by a stipulated time, nor shall Purolator be liable for the consequences of delay, misdelivery or the failure to deliver." Finally, the bill of lading provides that "FOR ALL CURRENT RULES, REGULATIONS AND RATES, SEE PUROLATOR'S SERVICE GUIDE OR, IF APPLICABLE, ITS TARIFF AVAILABLE FROM ALL PUROLATOR OFFICES." The defendant's service guide in effect in January 1984 sets forth similar limitations of liability and clearly advises shippers that the defendant will not be liable for failure to deliver by a stipulated time or date, and that the defendant "in no event shall be liable for any consequential, incidental or special damages which may arise from loss, damage, nondelivery or delay of any shipment." The guide also provides that "if the shipment involves a bid or other similar extremely time-sensitive material, the loss or delay of which might result in consequential, incidental or special damages, Purolator will accept such shipments, but subject to the limitations contained herein." The guide contains additional limitations as to liability addressed to the failure to deliver or late delivery and acts of God such as inclement weather.

The plaintiff concedes that prior to January 13, 1984, it was never assured by anyone that the defendant Purolator would guarantee overnight delivery of the package or any package tendered to them. Nathanson Dep. at 162. Nathanson contends that such an assurance was made through defendant's advertisement which reads "Overnight Not Overpriced".

Plaintiff offers no evidence that the defendant engaged in fraud or misrepresentation since the bill of lading clearly sets forth the terms of the contract. Although the plaintiff contends that those terms are not clearly set forth in the bill, that argument is without merit. Directly under the signature of the shipper is a notation directing the shipper to the terms of a contract set forth on the reverse side of the bill. Moreover, the records reflect that the plaintiff had a copy of the defendant's January 1984 service guide. Nathanson Dep. at 143. The record further reflects that the plaintiff had made 49 shipments with the defendant prior to the shipment which is the subject of this action and therefore should have been familiar with the terms and conditions of shipment and the bill of lading which is a part of this action.

It is noted that in the affidavit of Mr. Nathanson filed in support of plaintiff's opposition to the first motion for summary judgment, he states that "I was assured by defendant's employees on January 11, 1984, that the bid package would be delivered on time on January 12, 1984." Nathanson Affidavit ¶ 7. That affidavit was signed on August 6, 1985. However, on October 1, 1985, Mr. Nathanson testified at his deposition, as indicated above, that he was never assured by anyone at Purolator, prior to January 13, 1984, that Purolator would guarantee overnight delivery of the package or any package delivered to them. Indeed, he further testified that he never personally contacted anyone at Purolator in an effort to obtain assurances of overnight delivery of the packages tendered to Purolator by the plaintiff. Finally in this regard, the Court notes that the contract entered into by the parties is complete in and of itself and the contract is unambiguous. The statement that the contract was somehow modified by oral representations of unknown persons employed by the defendant would not be admissible since it would violate the parol evidence rule. See District-Realty Title Insurance Corp. v. Ensmann, 767 F.2d 1018, 1022–1023 (D.C.Cir.1985).

The Court concludes that there are no genuine issues of material fact and that the

defendant is now entitled to judgment as a matter of law. In sum, the terms of the contract are set forth in the written agreement between the parties and those terms cannot be modified by the *alleged* oral representations made by a representative of the defendant. Indeed, the record reflects that at no time did plaintiff receive a representation which guaranteed delivery of the package on or before the bid date.

The plaintiff made a business judgment. As Mr. Nathanson himself recognized, he could have delivered the bid directly himself but made a judgment to send the bid through Purolator. He must now live by that decision. In addition, as the defendant has demonstrated, the limitation of liabilities set forth by Purolator does not differ substantially from the limitation of liability utilized by other carriers in the same business. *See* reply to brief in opposition to summary judgment, Exhibit 1 (copies of bills of lading for Federal Express, DHL Worldwide Courier Express, and Airborne Freight Corp.)

Summary judgment will be entered for the defendant and this action will be dismissed. An appropriate Order has been issued.