UNIDEN CORPORATION OF AMERICA, Plaintiff,

v.

FEDERAL EXPRESS CORPORATION, Defendant.

Civ. A. No. 85–0614.

United States District Court, M.D. Pennsylvania.

July 31, 1986.

Stephen R. Buschmann, Buschmann, Carr & Meyer, Indianapolis, Ind., John Havas, Foulkrod, Reynolds & Havas, Harrisburg, Pa., for plaintiff.

Stephen L. Grose, Pepper, Hamilton & Scheetz, Harrisburg, Pa., Jon A. Baughman, Kenneth H. Zucker, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

This action concerns the interstate transportation of a letter shipped by Uniden Corporation of America (Uniden) via Federal Express Corporation (Federal) under Airbill No. 150984890. Federal Express has filed a Motion for Summary Judgment alleging that the limitation of liability in the airbill precludes recovery of the damages sought by Uniden and in any event limits Federal's liability to $100.00. Uniden has filed a Motion for Partial Summary Judgment arguing that the contractual limitation of liability is void.

The following facts are not disputed:

1. On November 16, 1984, Uniden shipped by Federal Express an overnight letter by Airbill No. 150984890.

2. The overnight letter contained a performance bond to support a bid to be submitted by Uniden to the Commonwealth of Pennsylvania, Department of General Services.

3. Airbill No. 150984890 was marked to "Mr. Mike Wildeson, 1 Box 1047, Brodbeck, PA 17329" and contained a telephone number "717/229–2823" in the box for a phone number for Hold for Pick-Up or Saturday Delivery.

4. Airbill No. 150984890 was marked with an "XX" in the boxes designated for "Hold for Pick-Up" and "Saturday Service Required".

5. Airbill No. 150984890 was marked with a "—" in the box designated for "Declared Value".

6. Uniden did not pay additional charges, which are required when declaring

that the value of a package is in excess of $100.00.

7. The airbill was completed by a Uniden employee.

8. Federal Express provides a hold for pick-up service at its Lewisberry, Pennsylvania office.

9. The Federal Express Service Guide, effective October 1, 1984, states on pages 38 and 39 "Shipments marked 'Hold for Pick-Up' will be held at the Federal Express destination station for pick-up by the recipient ... After being held for five (5) business days from the date of tender, the shipment will be considered undeliverable."

10. Federal Express delivered the "Overnight Letter" to its office in Lewisberry, Pennsylvania, on Saturday, November 17, 1984.

11. Sometime between November 17, 1984, and November 19, 1984, the "Overnight Letter" was placed on a delivery truck and taken from the Federal Express office in Lewisberry, Pennsylvania.

12. The "Overnight Letter" was finally delivered to a B. Thomas, 1414 North Office, Capitol Building, Harrisburg, Pennsylvania, on Monday, November 19, 1984.

13. The airbill in question, no. 150984890, provides on its face:

IN TENDERING THIS SHIPMENT, *SHIPPER AGREES THAT F.E.C. SHALL NOT BE LIABLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING FROM CARRIAGE HEREOF.* F.E.C. DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THIS SHIPMENT. THIS IS A NON–NEGOTIABLE AIRBILL SUBJECT TO CONDITIONS OF CONTRACT SET FORTH ON REVERSE OF SHIPPER'S COPY. *UNLESS YOU DECLARE A HIGHER VALUE, THE LIABILITY OF FEDERAL EXPRESS CORPORATION IS LIMITED TO $100.00.* FEDERAL EXPRESS DOES NOT CARRY CARGO LIABILITY INSURANCE. (emphasis added).

14. The reverse of shipper's copy of Airbill No. 150984890 provides in pertinent part:

6. DECLARED VALUE AND LIMITATION OF LIABILITY. THE LIABILITY OF FEDERAL EXPRESS IS LIMITED TO THE SUM OF $100.00 unless a higher value is declared for carriage herein and a greater charge paid at a rate of 30¢ per $100.00 value. The maximum higher declared value is $5,000.00 ... FEDERAL EXPRESS SHALL NOT BE LIABLE IN ANY EVENT FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS OR INCOME WHETHER OR NOT FEDERAL EXPRESS HAD KNOWLEDGE THAT SUCH DAMAGES MIGHT BE INCURRED.

15. The Federal Express Service Guide, effective October 1, 1984, provides that except for specified items of extraordinary value, the maximum declared value for any package in a shipment is $25,000.00.

Plaintiff Uniden seeks to recover its lost profits based on negligence and breach of the contract of carriage as a result of its loss of a bid due to the late delivery of the performance bond. Defendant Federal argues that the limitation of liability clause precludes Uniden from recovering damages in the form of lost profits or, in the alternative, that Uniden's damages are limited to $100.00.

The first issue to be decided is whether federal or Pennsylvania law is applicable in determining the validity of the limitation of liability clause. Uniden argues that Pennsylvania law applies, and that even under so-called federal "common law" the limitation of liability clause is void. According to Uniden, the Federal Aviation Act of 1958, 49 U.S.C. § 1301 *et seq.*, does not expressly refer to provisions in contracts for carriage which preclude recovery of certain damages and limit an air carrier's potential liability. Absent specific congressional action, Uniden argues, state law controls with respect to whether such provisions are valid. Uniden's argument is based on the assertion that the Federal Aviation Act is similar in purpose and scope to the Interstate Commerce Act of February 4, 1887, 24 Stat. 379, which, prior to the passage of

the Carmack Amendment of 1906, was construed not to preclude the states from enforcing "their own theories of public policy against limitations of liability ..." (Uniden's Brief pp. 8–9). Uniden argues that since the Carmack Amendment was required to alter this construction of the Interstate Commerce Act and since no similar amendment was added to the Federal Aviation Act, the Federal Aviation Act operates as did the Interstate Commerce Act prior to the passage of the Carmack Amendment.

■ Contrary to Uniden's contention, the following cases control the outcome of this issue: *First Pennsylvania Bank, N.A. v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1115 (3d Cir.1984); *Apartment Specialists, Inc. v. Purolator Courier Corp.*, 628 F.Supp. 55, 57 (D.D.C.1986); *Ragsdale v. Airborne Freight Corp.*, 173 Ga.App. 48, 325 S.E.2d 428, 430 (1984). These cases specifically hold that the question of an air carrier's limitation of liability is governed by federal law. Uniden claims that many of these cases can be distinguished. It claims that *Universal* and *Ragsdale* were not negligence cases and that *First Pennsylvania Bank* involved an affirmative declaration of value, a fact not present in this case. These distinguishing factors are irrelevant. The controlling factor is that these cases involved limitation of liability by common carriers based upon released value rates in their contracts.

Uniden further argues that because of air carrier deregulation, federal control is removed and state law therefore fills its place. *First Pennsylvania Bank* addressed this issue as follows:

The legal *sequelae* of deregulation therefore had no impact upon the applicability of the federal common law's released value doctrine. Prior to deregulation the question whether a particular released value tariff provision was reasonable *vel non* might have had to be determined in the first instance by the Board under the "primary jurisdiction" doctrine in view of the carrier's obligation under Section 404(a) and the Board's powers under Section 1002(d). *Trailways of New England v. C.A.B.*, 412 F.2d 926, 931 (1st Cir.1969); *but see Klicker*, 563 F.2d [1310] at 1313 [ (9th Cir.1977) ]. Deregulation deprived the C.A.B. of power to determine questions of reasonableness of tariff provisions. Hence, in effect it merely did away with the applicability of the doctrine of primary jurisdiction. After deregulation, the validity of the agreed value provision in Eastern's voluntarily published tariff, available in the Official Freight Rate Tariff Book, became a purely judicial question for determination by application of the federal common law patterned upon the policy of the Carmack Amendment. (footnote omitted).

*Id.* at 1122.

■ Uniden further argues that Federal's limitation of liability provisions are void and unenforceable under federal law. Under federal common law, the authority of a common carrier to limit its liability for loss of goods in its care is governed by the "released value doctrine" under which a carrier may limit its liability to an agreed value of the goods, provided that the shipper has the option, and knowingly chooses to pay a lower price for lesser coverage. *First Pennsylvania Bank*, 731 F.2d at 1116. Uniden argues that such a contractual agreement must be fair, just and reasonable and must provide for an optional higher rate, and that Federal's agreement meets neither standard. Uniden also argues that Federal's contract did not permit Uniden to negotiate for full coverage of its property and hence violated the released value doctrine.

The courts have consistently upheld limits of liability clauses and exclusion of liability clauses as to consequential or special damages, *i.e.* lost profits. *First Pennsylvania Bank v. Eastern Airlines*, 731 F.2d 1113 (3d Cir.1984); *Universal Computer Systems, Inc. v. Allegheny Airlines, Inc.*, 479 F.Supp. 639 (M.D.Pa.1979), *aff'd mem.* 622 F.2d 579 (3d Cir.1980); *Apartment Specialists, Inc. v. Purolator Courier Corp.*, 628 F.Supp. 55 (D.D.C.1986); *Neal v. Republic Airlines, Inc.*, 605 F.Supp. 1145 (N.D.Ill.1985); *Ragsdale v. Airborne*

*Freight Corp.*, 173 Ga.App. 48, 325 S.E.2d 428 (1984).

Plaintiff attempts to distinguish its own case from those cited previously. The Third Circuit, in *First Pennsylvania Bank*, 731 F.2d at 1116, began its analysis of the released value doctrine by quoting from *Hart v. Pennsylvania R.R.*, 112 U.S. 331, 340, 5 S.Ct. 151, 155, 28 L.Ed. 717 (1884):

> There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed after a loss. It is just to hold the shipper to his agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier.

The *First Pennsylvania Bank* court reaffirmed the principle that only when there is a *bona fide* alternative enabling the shipper to declare a higher valuation upon paying a higher rate may a carrier limit its liability to the released value at the lower rate. *Id.* at 1117.

In the present case Uniden chose not to declare a value greater than $100.00 when it filled in the appropriate box on the airbill with "—". That a higher rate was available is clear from the express limitation of liability on the back of the airbill, which states, "The liability of Federal Express is limited to the sum of $100.00 *unless a higher value is declared for carriage herein and a greater charge paid* at a rate of 30¢ per $100.00 value." (emphasis added). Uniden thus indicated its assent to the stipulated conditions of the airbill (in essence, the contract provisions), that "unless you declare a higher value, the liability of Federal Express Corporation is limited to $100.00." Therefore, the "obligation of the carrier must be determined solely from the recitals of the written contract itself." *Thomas v. TransWorld Airlines, Inc.*, 457 F.2d 1053, 1058 (3d Cir.1972). The airbill provided a fair opportunity for Uniden to choose a higher declared value based on a higher rate, but it failed to do so.

It is clear from Uniden's Answer to Federal Express Interrogatory No. 3. that the Uniden employee who completed the airbill had "completed a large number of Federal Express airbills everyday, many of which were very important," so that Uniden had ample opportunity to acquaint itself with its contractual rights. In addition, Federal Express' credit records for the week prior to the day of shipment in question show that a package shipped from the same Uniden office that shipped the package in question was declared by Uniden to have a value of $500.00. (Affidavit of Leslie C. Lee at ¶ 6), indicating that Uniden had knowledge of the released value clause and had, on another occasion, availed itself of the opportunity to declare a value in excess of $100.00.

Plaintiff argues that in *First Pennsylvania Bank* the shipper knowingly had a choice to declare a value. However, the goods in *First Pennsylvania Bank* had an intrinsic value. In fact, in almost all cases cited in the briefs which discuss the released value doctrine and the opportunity on the part of the shipper to claim and negotiate for a higher value, the goods being shipped had intrinsic value. In those cases involving goods of extrinsic value the shippers were limited to the carriers' minimum coverage. The exception seems to be *Neal, supra.*

Plaintiff argues that in *Universal Computer, supra,* the court stated that if the carrier had been negligent, the proper measure of damages would have been the lost profits. That is not a correct interpretation. The court stated that the measure of damages for a *conversion* is generally the plaintiff's loss which is figured as the market value at the time and place of conversion, plus interest. *Id.* at 645 (citations omitted). In the present case there is no cause of action involving conversion. Thus, plaintiff's argument does not apply.

▉ Plaintiff further argues that Federal's actions amount to gross negligence, thereby voiding its limitation of liability. In *Neal*, 605 F.Supp. at 1149, n. 3, the court stated:

Where interstate carriage is concerned, only an appropriation of property by the carrier for its *own* use is sufficient to get around limits of liability. Wilful misconduct is not enough. (citation omitted) (emphasis in original).

The facts in this case do not support a contention of gross negligence.

In sum, the parties entered into a written contract, the terms of which are clear. A shipper seeking damages from a carrier for delay in delivery or loss of property is bound by the terms of the carriage contract. *Neal, supra* at 1148. By leaving the declared value section blank, Uniden limited its expectation of recovery to an amount not in excess of $100.00.

Plaintiff argues that even had it attempted to state a higher value, it could not recover the same because Federal wholly exonerates itself from consequential damages. That argument in this case is moot, but the court notes that in *Apartment Specialists* and *Ragsdale*, preclusion of liability for consequential damages was upheld where the terms of that the preclusion were clearly stated in the contract. The court in *Apartment Specialists*, 628 F.Supp. at 59, noted the similarity of the limitation and preclusion of liability clauses used by Purolator and other carriers in the same business such as Federal Express, DHL Worldwide Courier Express and Airborne Freight Corporation and stated that the *decision to ship under those terms was* a business judgment.

In ruling on a Motion for Summary Judgment, the court must find that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The contractual limitations of Federal are valid. There is not genuine issue as to any material fact. Uniden's recovery is limited to $100.00.

### ORDER

In accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

1) Uniden's Motion for Partial Summary Judgment is denied;

2) Federal's Motion for Summary Judgment to preclude recovery in that form of lost profits is granted;

3) Uniden's recovery is limited to $100.00.