## Federal Express v. Paris Business Forms Inc.

*Kenneth H. Zucker*, for plaintiff.
*Henry B. Fitzpatrick Jr.*, for defendant.

KANE, *J.*, January 6, 1988 — Plaintiff, Federal Express, initially filed suit to collect $878.15 in unpaid delivery charges. By agreement, plaintiff's complaint was amended to specify unpaid delivery charges of $4,015.84. Defendant, Paris Business Forms Inc., responded by counterclaim alleging that Federal Express had failed to timely deliver a package as promised and that this delay resulted in the nonaward to defendant of a government con-

tract. Defendant seeks the amount of $198,000 in lost profits as consequential damages.

The matter before us for determination is plaintiff's motion for summary judgment on defendant's counterclaim. The record contains the pleadings, extensive memoranda of law submitted by counsel, supporting affidavits and portions of a deposition of Mr. Toscani (vice president of Paris Business Forms Inc.). Additionally, oral argument was heard on October 23, 1987, during which counsel for the parties agreed to certain factual averments as set out below.

## FACTS AND ALLEGATIONS

On Friday, August 12, 1983, Paris Business Forms Inc. and Federal Express Corporation (hereinafter referred to as Federal) entered into a contract for the shipment of a package. This package contained a bid to perform certain services for the United States Government Printing Office. Paris states that on the basis of advertisements and verbal representations by unspecified Federal employees, the bid was sent via Federal Express because it was imperative that it reach the government office by 11:00 a.m., Monday, August 15, 1983. If the bid did not arrive by that day and time, Paris would not be considered for performance of the government job. Paris alleges that advertisements to the public at large promised that packages accepted one day by Federal would be delivered "absolutely, positively" by 10:30 a.m. the next business day. Paris further alleges that the requirement that the bid be delivered by 11:00 a.m. and the fact that it was a contract bid was communicated to an unspecified representative of Federal and that this representative verbally promised that this specific package would be delivered by 10:30 a.m. Monday. For reasons neither explained nor explored by either party, the package

containing the bid did not arrive until 11:07 a.m. Monday, August 15, 1983. Hence, Paris was not considered for the contract. Paris contends that had the bid arrived on time, it would have been awarded the contract which would have resulted in a profit of $198,000.

Paris shipped the bid in the standard Federal Express courier package which is known in the trade as an "airbill." Mr. Toscani, then director of sales and marketing and now vice president of Paris, signed and addressed the airbill which contains the following language on its front, directly under the address of the receiver:

"In tendering this shipment, shipper agrees that F.E.C. shall not be liable for special, incidental or consequential damages arising from carriage hereof. F.E.C. disclaims all warranties, express or implied, with respect to this shipment. This is a nonnegotiable airbill subject to conditions of contract set forth on reverse of shipper's copy. Unless you declare a higher value, the liability of federal express corporation is limited to $100.00. Federal Express does not carry cargo liability insurance."

On its front the airbill provides a space to be completed in the event the shipper desires to declare that the package contains a value higher than $100. Mr. Toscani, although signing and addressing the airbill, did not designate in the appropriate box a higher value nor did Paris pay any additional monies to procure greater liability coverage. On the reverse of the shipper's copy of the airbill, the contract provides in part:

". . . 7. Declared value and limitation of liability. The liability of Federal Express is limited to the sum of $100.00 unless a higher value is declared for carriage herein and a greater charge paid at the rate of $.30 per $100 value. *The maximum higher declared*

*value is $5,000 . . .* The liability of Federal Express is limited to the declared value of the shipment or the amount of loss or damage actually sustained, whichever is lower. Federal Express is not liable for loss, damage, delay, mis-delivery or non-delivery not caused by its own negligence or . . . *Federal Express shall not be liable in any event for any special, incidental or consequential damages, including but not limited to loss of profits or income whether or not Federal Express had knowledge that such damages might be incurred . . ."*

Paris admits that at no time did any employee of Federal warrant or promise anything with regard to special, incidential or consequential damages if it failed to deliver on time.

## DISCUSSION

Contrary to the express language of the contract, Paris claims a right of recovery of $198,000 in lost profits, or consequential damages. Paris asserts that Federal is estopped from relying on the limitation of liability clause contained in the contract of carriage due to Paris' detrimental reliance on advertisements and representations. Paris also asserts that it was not aware of the option of declaring a higher value for an increased charge and thus should not be bound by the $100 limitation. Finally, Paris contends that the contract is unconscionable and unenforceable as against public policy.

## LIMITATION OF LIABILITY

We will first address the limitation of liability clause. Parties and counsel agree and the court concurs that federal common law is applicable and controlling in these issues. *First Pennsylvania Bank v. Eastern Airlines Inc.,* 731 F.2d 1113 (3d Cir., 1984); *Ragsdale v. Airborne Freight Corp.,* 173 Ga.

App. 48, 325 S.E. 2d 428 (1985); *Apartment Specialists Inc. v. Purolator Courier Corp.,* 628 F. Supp. 55 (D.D.C. 1986); *Uniden Corporation of America v. Federal Express Corp.,* 642 F. Supp. 263 (M.D., Pa. 1986).

From a reading of pertinent federal cases, it is quite clear that a common carrier has the right to limit its liability on a "released valuation" basis. That is, in return for a lower carriage rate, a shipper is deemed to release a carrier from liability beyond a stated amount. *Universal Computer Systems Inc. v. Allegheny Airlines Inc.,* 479 F. Supp. 639 (M.D., Pa. 1979), aff'd mem., 622 F. 2d 579 (3rd Cir. 1980).

The evolution, definition and rationale for the "released value doctrine" was succinctly and clearly enunciated by the Third Circuit in *First Pennsylvania Bank v. Eastern Airlines,* supra. In this case, the court explained that:

". . . Under the common law of common carriers as applied by federal and state courts, it was generally held that public policy forbade contracts of carriage where the carrier sought to exculpate itself from liability for its own negligence. However, a sharp distinction was drawn between such exculpatory provisions and provisions which merely limited liability to the agreed value of the property shipped when the amount of the rate depended upon the value of the shipment. Here the limitation of the carrier's liability was a consequence of the calculation of the transportation charge based upon the agreed value, rather than an exculpation from negligence. In a suit against the carrier in such a case, the carrier's negligence was assumed to exist, rather than be avoided; the limitation of the shipper's damages to the agreed value was merely a consequence of the assumption that the agreed upon value was the true value of the property transported

. . . The agreed upon value merely constituted an estoppel against the unfairness of asserting a larger amount as the true value when the carrier was sued for damages in spite of the fact that a smaller value had been used to calculate the rate. . ." 731 F.2d at 1116.

The contract of carriage at issue provides, inter alia, that Federal would be liable for $100 unless a higher value was declared by the shipper. Further, that under no circumstances would Federal be liable for the payment of any special, incidental or consequential damages, regardless of whether Federal had knowledge that those damages might be incurred.

When the issue before the courts has been whether the limitation of liability clause excludes recovery of lost profits or consequential damages, the courts have uniformly upheld the limitation clause and denied recovery of consequential damages. *First Pennsylvania Bank v. Eastern Airlines,* 731 F.2d 1113 (3d Cir. 1984); *Universal Computer Systems Inc. v. Allegheny Airlines Inc.,* 479 F. Supp. 639 (M.D., Pa. 1979), aff'd mem. 622 F.2d 579 (3d Cir. 1980); *Bullock Construction Inc. v. Federal Express Corp.,* ___ F. Supp. ___ (D.C. Maryld 1987), slip op.; *Uniden Corp. v. Federal Express Corp.,* 642 F. Supp. 263 (M.D. Pa 1986); *Apartment Specialists Inc. v. Purolator Courier Corp.,* 628 F. Supp. 55 (D.D.C. 1986); *Neal v. Republic Airlines Inc.,* 605 F. Supp. 1145 (N.D. Ill. 1985); *Ragsdale v. Airborne Freight Corp.,* 173 Ga. App. 48, 325 S.E.2d 428 (1984).

## OPTION TO CHOOSE

Paris asserts that it was not aware of the option of declaring a higher value for an increased delivery charge. The court is of the opinion and finds that

Paris was indeed given an opportunity of choosing a higher rate, although for an amount less than its alleged profits would have been.

Mr. Toscani, vice president of Paris, filled out the airbill. Mr. Toscani, a lawyer, testified that he was fully aware of clauses pertaining to disclaimers and provisions limiting a shipper's liability to a fixed dollar amount. Mr. Toscani felt certain these type provisions were in Federal Express airbills. Mr. Toscani filled out the airbill and in so doing placed in the box marked "packages" the notation "1" and in the box marked "weight" the notation that appears to read "1 oz.". In the adjacent box, titled "declared value" no notation exists and the box is blank. Directly under the place for the recipient's name (which Mr. Toscani completed) appears the language, in capital letters, ". . . This is a non-negotiable airbill subject to conditions of contract set forth on reverse of shipper's copy. Unless you declare a higher value, the liability of Federal Express Corporation is limited to $100. . ." Indeed, according to Mr. Toscani, the very business of Paris Corp. is to "print these things all day long with all that fine print on the back and half the time you can't read it. And I'm fully aware of disclaimers and limited liability and hold harmless clauses and all these things. . ."

In *Uniden v. Federal Express,* supra, a representative of Uniden completed the airbill. The box designated "declared value" was left blank and Uniden did not pay any additional charges as required for a declaration of value greater than $100. The front and reverse side of the airbill in *Uniden* contained language identical to that at issue here. The court in *Uniden* opined: "The airbill provided a fair opportunity for Uniden to choose a higher declared value

based on a higher rate, but it failed to do so." 642 F.Supp. at p.266.

Likewise, in *Ragsdale v. Airborne Freight Corporation,* two blank spaces, one to be filled in for "declared value of carriage" and the other for "declared value of insurance" appeared above the language, "liability of Airborne Freight Corp. is limited to value shown above, or as defined in its governing tariffs. . ." Although the representative of the shipper signed the contract, these two spaces above the signature were left blank. The court, in finding without merit the contention that the liability clause was invalid because the representative was not given a fair opportunity to affirmatively choose a higher rate, observed: "[the president of the company] was given a fair opportunity to read the airbill and state the value of the package. . ." Supra at p.430.

In *Apartment Specialists Inc. v. Purolator Courier Corp.,* supra, plaintiff had made 49 shipments with defendant prior to the shipment at issue and contended, as does defendant in the instant case, that it was not aware of an option of declaring a higher value for an increased delivery charge. In that case the court observed that plaintiff "should have been familiar with the terms and conditions of shipment and the bill of lading which is a part of this action." Supra at p.58. A similar observation is made in the instant case, particularly in view of Mr. Toscani's familiarity with contracts of the nature here involved and Ms. Moore's affidavit relating that according to Paris account records, Paris shipped at least 15 packages over the 1½-month period prior to August 12, 1983.

Based upon the uncontroverted facts and applicable law, the court is of the opinion and finds that defendant's contention of "no option to choose a higher value" is without merit.

## UNCONSCIONABLE CONTRACT

Paris next contends that the maximum declared value permitted by the airbill ($5,000) violates the "released value doctrine," since Paris did not have the option of obtaining coverage for the full value of the goods (presumably $198,000). This, therefore, results in an unconscionable contract.

It is true, as pointed out by Paris, that an integral part of the "released value doctrine" is that the shipper must have had the option and alternative of choosing a higher value or a choice of paying a lower price for lesser coverage. *Uniden Corporation v. Federal Express,* supra at p.265; *First Pennsylvania Bank v. Eastern Airlines,* supra at p. 1117. It is equally true that the evidence supports the fact that Paris was given an opportunity of choosing a higher rate. Defendant's assertion that its inability to negotiate for full coverage of its property (lost profits) violates the "released value doctrine" is without merit.

Paris took no steps to insure the package over the minimum of $100 and did not specify any amount on the bill of lading. Additionally, there is no allegation by Paris of any discussions or requests to increase the insured value to any amount approaching their anticipated profits.

As discussed above, courts have consistently upheld limitation of liability clauses where those clauses excluded consequential and special damages. *Uniden v. Federal Express,* supra; *Ragsdale v. Airborne Freight Corp.,* supra; *Apartment Specialists v. Purolator Courier Corp.,* supra. "There is no merit to plaintiff's contention that defendant should have given it the opportunity to obtain liability coverage for the amount of profit which allegedly would have resulted from delivery of the message, since defendant has expressly disclaimed in writing any liability for such consequential damages." *Bullock*

*Construction Corporation v. Federal Express Corporation*, _____ F. Supp. _____, (D.C. Maryland, June 22, 1987) slip opinion at p.11.

As to the remainder of defendant's argument of unconscionability of contract, we are constrained to observe that the contract was not one of adhesion. Plaintiff and defendant are large, experienced corporations, each well-versed in the language and nuances of disclaimers, limitations of liability and hold harmless clauses. Indeed, Paris Business Forms Inc. is admittedly engaged in the business of printing such provisions in various contracts. As they have conceded, the contracts containing limitation of liability clauses, specifically those of disclaimer of liability as to any consequential damages, have been reviewed in a variety of settings and by a variety of courts and have been consistently declared to be valid contracts and not unconscionable.

## EQUITABLE ESTOPPEL

Finally, we are asked to rule that where there is reliance that a package will reach its destination on time and instead through delay the package does not, that this results in Federal Express being liable for any and all lost profits regardless of the fact that the express language of the contract states that they will not be so liable. Counsel for Paris candidly conceded that he could not cite this court any case, federal or state, supporting this request and argument.

Notwithstanding this concession, we will assume, in an effort to comprehensively dispose of this motion, that advertisements, pervasive and prevalent, led the public, including Paris, to believe that "absolutely and positively" a package would arrive at its destination by 10:30 a.m. the next business day. We will further assume that representations were made to Mr. Toscani by a representative

(or representatives) of Federal to the effect that this particular package would absolutely be delivered by 10:30 a.m. the following Monday. The question is then posed: How does this reliance on timely delivery in turn translate into a reliance that in the event the package was delayed, Federal Express, contrary to the language and terms of carriage as set forth in its contract, would compensate the shipper for lost profits or consequential damages due to the delay?

It is evident from the very definition of the "released value doctrine" that some negligence on the part of the shipper is contemplated. Stated another way, negligence is assumed. Likewise, it is just as evident from the language of the airbill contract that Federal Express agreed to be responsible for their own negligence which might in turn result in the delay of a shipment (airbill, paragraph 7). The remedy and measure of damages for that delay is found directly on the face of the airbill and in the contract on the reverse side of the shipper's copy. Both state, "liability of $100 unless a greater value is declared . . ."

It is compellingly clear that this contract assumes that there may be incidents of delay due to the negligence of Federal Express. Hence, the liability language and the coverage. Additionally, it is just as clear that the contract limits liability as to consequential damages. Counsel directs us to both state and federal equitable estoppel law, and asserts that the doctrine is the same whether applied and defined in a federal or state court.

Equitable estoppel consists of two essential elements: inducement and justifiable reliance on that inducement. "A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his

own injury or detriment, may be enforced in equity." *Novelty Knitting Mills Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502, 503 (1983).

Nowhere in this case is there the shadow of an insinuation that advertisements and/or verbal representations were made that in the event the package did not arrive on time Paris would be compensated for lost profits. Counsel for Paris specifically acknowledged during oral argument that no such representations were expressly or impliedly made. Accordingly, we find that there was and is no equitable estoppel in this case that would operate to void the limitation of liability clause. See also: *Uniden Corp. v. Federal Express Corp.,* 642 F. Supp. 263 (M.D., Pa. 1986); *Apartment Specialists Inc. v. Purolator Courier Corp.,* 628 F. Supp. 55 (D.D.C. 1986). We specifically find that there is no conceivable basis for arriving at a conclusion that there was justifiable reliance on the part of Paris that in the event the package did not reach its destination on time, Paris would be compensated for lost profits.

Accordingly, we enter the following

## ORDER

And now this January 6, 1988, plaintiff's motion for summary judgment in its favor and against defendant on defendant's counterclaim is hereby granted. Defendant's counterclaim is dismissed with prejudice.