Mabayomije ALABI, Plaintiff,

v.

DHL AIRWAYS, INC., a Corporation
of the State of Nevada, Defendant.

Superior Court of Delaware,
New Castle County.

Submitted: July 17, 1990.
Decided: Aug. 1, 1990.

Paul J. Kania, of Heyden, Kania & O'Neill, Wilmington, for plaintiff.

Jeffrey S. Goddess and Mark Minuti, of Saul, Ewing, Remick & Saul, Wilmington, for defendant.

## OPINION

HERLIHY, Judge.

This is a breach of contract action filed by plaintiff Mabayomije Alabi [plaintiff] against defendant DHL Airways, Inc. [DHL], seeking compensatory and punitive damages[1] for DHL's failure to deliver an express document envelope, which allegedly contained $15,000 in cash.

DHL has moved for summary judgment arguing that due to plaintiff's intentional misrepresentation of the contents of the envelope, both the contract of carriage and the contract of insurance are unenforceable. In the alternative, DHL argues that its liability on the contract of carriage is contractually limited to $100.[2]

Plaintiff counters by arguing that the description of the contents of the envelope were not a misrepresentation as a matter of law. Further, as to DHL's alternative argument, plaintiff argues that DHL has not demonstrated, as a matter of law, its liability is limited to $100. Plaintiff asserts these are material issues of fact and, therefore, summary judgment should be denied. For the reasons stated herein, the motion for summary judgment will be DENIED.

## I

DHL operates a worldwide air express service for small packages and envelopes. DHL accepts orders for delivering by telephone and dispatches a courier to pick up the envelope.

On April 25, 1986, plaintiff called DHL's Philadelphia office requesting an envelope pickup for delivery to plaintiff's cousin in London, England. Plaintiff claims, and DHL does not deny (at this point), that he then inquired whether the envelope could be insured for $15,000 and that the DHL representative indicated the maximum insurance that could be purchased was $10,-000. Plaintiff had used DHL's services numerous times before April, 1986 and had

---

**1.** The parties did not address the issue of punitive damages in their briefing. Consequently, the Court will not rule on that issue.

**2.** This matter is scheduled for trial on August 6, 1990. The shortness of time was due to a request by the Court for additional briefing following DHL's motion and plaintiff's response.

been supplied with a stack of envelopes and Airway bills by a representative of DHL.

Prior to the arrival of the courier, plaintiff filled out the Airway bill and sealed the contents of the envelope. Upon the arrival of the courier, plaintiff states that he again inquired as to the possibility of insuring the envelope for $15,000 and was told that the limit was $10,000. Plaintiff paid the courier a total of $76 [3] for the contract of carriage and for the purchase of $10,000 worth of insurance.

On the Airway bill in a block marked "description of contents", plaintiff wrote "documents regarding school bills". The courier examined the Airway bill, did not question plaintiff as to the contents and accepted the envelope for delivery.

Plaintiff's envelope arrived in London but DHL was unable to deliver the envelope the day it arrived. The envelope was stored overnight at DHL's London facility and the next day, when DHL was to attempt delivery again, the envelope was missing. DHL notified plaintiff of the loss and conducted a search for the envelope. The search, which included the help of the police, was unsuccessful and the envelope's whereabouts remain unknown.

The Airway bill utilized by DHL is 6″ × 8″, six copy, NCR paper which contains terms on both sides. As noted before, on the front of the bill is a space for a description of contents. In addition, there is a space for the customer to request insurance and also a space to indicate the insured amount, if the shipper has elected to insure the shipment. Below the insurance information blocks is the following:

> THIS IS A NON–NEGOTIABLE AIRBILL SUBJECT TO THE TERMS AND CONDITIONS SET FORTH ON THE REVERSE OF SHIPPER'S COPY. IN TENDERING THIS SHIPMENT, SHIPPER AGREES THAT DHL SHALL NOT BE LIABLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING FROM THE CARRIAGE HEREOF. DHL DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THIS SHIPMENT. THE LIABILITY OF DHL FOR ANY LOSS OR DAMAGE SHALL BE LIMITED TO U.S. $100.00. INSURANCE COVERAGE IS AVAILABLE UPON SHIPPER'S REQUEST AND PAYMENT THEREFOR.

In addition, there is a place for the shipper's signature and in that block appears "I WARRANT THAT ALL DETAILS GIVEN HEREIN ARE TRUE AND CORRECT."

The reverse side of the Airway bill contains eleven paragraphs that constitute DHL's terms and conditions applicable to the shipments accepted by DHL referenced on the front of the bill. Paragraph 11 lists the materials that are not acceptable for shipment by DHL. Among those and listed first is "currency".

Paragraph 2 titled "SHIPPER'S OBLIGATIONS AND ACKNOWLEDGEMENTS" provides:

> The Shipper warrants that each article in the shipment is properly described on this AIRBILL and has not been declared by DHL to be unacceptable for transport, and that the shipment is properly marked and addressed and packed to ensure safe transportation with ordinary care in handling.

> The Shipper hereby acknowledges that DHL may abandon and/or release any item consigned by the Shipper to DHL, which DHL has declared to be unacceptable or which the Shipper has undervalued for Customs' purposes or misdescribed hereon, whether intentionally or otherwise, without incurring any liability whatsoever to the Shipper and the Shipper will save and defend, indemnify and hold DHL harmless from all claims, damages, fines and expenses arising therefrom.

---

**3.** There is a discrepancy as to the breakdown of this payment. DHL asserts that $50 was the cost for the contract of carriage and $26 was for the insurance. Plaintiff asserts the opposite in that $50 was for insurance and $26 was for carriage. This disagreement is insignificant as it is agreed that consideration was paid for both a contract of carriage and a contract of insurance.

In paragraph 3, DHL reserves the right to open and inspect all shipments.

Paragraph 5 titled "LIMITATION OF LIABILITY" states:

The liability of DHL for any loss or damage to the shipment (which terms shall include all documents or parcels consigned to DHL under this AIRBILL) is limited to the lesser of:

(a) U.S. $100.00.

(b) The amount of loss or damage to a document or parcel actually sustained, or

(c) The Actual Value of the document or parcel as determined under section 6 hereof, without regard to its commercial utility or special value to the Shipper.

Plaintiff claims he did not notice the reference on the front of the Airway bill to the terms and conditions on the back. Further, plaintiff claims that he did not notice the limitation of liability claimed by DHL. In addition, plaintiff claims that it was impossible to read the reverse side of the "shipper's copy" as it was the fourth copy from the top and the six copies are attached at the ends until the pick-up person detaches them. DHL argues that because plaintiff had in his possession a number of Airway bills prior to the date of this shipment and had used its services before, he had ample time to familiarize himself with all the terms and conditions. Further, DHL argues that the reverse of the sixth copy was the same as that of the "shipper's copy" and that plaintiff need only turn over the entire Airway bill to read the terms and conditions. Finally, DHL notes that under the circumstances of this case, only the plaintiff knows for certain what was contained in the shipment as DHL never exercised its right to inspect the contents.

## II

■ A motion for summary judgment under Superior Court Civil Rule 56 may only be granted where there are no material issues of fact present, *Moore v. Sizemore*, Del.Supr., 405 A.2d 679, 680 (1979), and in light of the undisputed facts,. the movant is entitled to judgment as a matter of law, *Tew v. Sun Oil Co.*, Del.Super., 407 A.2d 240, 242 (1979). The moving party bears the burden of showing there are no material issues of fact present. *Moore*, 405 A.2d at 680, and further, the record must be read in the light most favorable to the non-moving party, *Tew*, 407 A.2d at 242. When considering a motion for summary judgment, a court is required to "examine the present record, including pleadings, depositions, admissions, affidavits, and answers to interrogatories". *Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver, Inc.*, Del.Super., 312 A.2d 322, 325 (1973). "If from the evidence produced there is some reasonable indication that a material fact is in dispute, or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law, summary judgment will not be granted." *Tew*, 407 A.2d at 242.

## III

■ DHL seeks summary judgment claiming plaintiff's contracts with it are voidable due to his alleged misrepresentation of the contents of the envelope. A contract may be voidable on the basis of misrepresentation, be it a fraudulent or an innocent misrepresentation. *Norton v. Poplos*, Del.Supr., 443 A.2d 1 (1982); 1 *Restatement (Second) of Contracts*, § 164. As such, misrepresentation can be asserted as an affirmative defense to an action on the contract. It should be emphasized that in the instant case, there are, in fact, two contracts at issue, one for carriage and one for insurance. However, both contracts arise from essentially the same transaction and the alleged misrepresentation is the same as to both.

■ The *Restatement (Second) of Contracts* provides probably the clearest discussion of the elements that need be shown to prevail when asserting misrepresentation as a defense. In order for a contract to be voidable, a party must show all four of the following elements: (1) that there was a misrepresentation; (2) that the misrepresentation was either fraudulent or material; (3) that the misrepresentation induced the recipient to enter into the contract; and (4) that the recipient's reliance

on the misrepresentation was reasonable. 1 *Restatement (Second) of Contracts,* § 164.

▮ The first issue is whether the labeling of the envelope, allegedly containing $15,000 in cash, as "documents regarding school bills" constitutes a misrepresentation. A misrepresentation is "an assertion that is not in accordance with the facts". 1 *Restatement (Second) of Contracts,* § 159; *see Norton,* 443 A.2d at 5. Plaintiff asserts that "documents" suffices as a general description of currency. This is an untenable position. Such terms as negotiable instruments and certificates may suffice as a description of cash only because they indicate to the reader that the contents of the envelope have an inherent value. The term "documents regarding school bills" does not indicate that the contents are inherently valuable to third-party interlopers or others in DHL's position. Plaintiff's description is not in accord with the now alleged fact that there was cash in the envelope and, consequently, is a misrepresentation of the contents.

▮ The second element is whether the misrepresentation was fraudulent or material. If the misrepresentation was non-fraudulent or innocent, it must be material for the contract to be voidable. 1 *Restatement (Second) of Contracts,* § 164, comment b. On the other hand, if the misrepresentation was fraudulent, it is not required to be material for the contract to be voidable. *Id.*

(1) A misrepresentation is fraudulent if the maker intends his assertion to induce a party to manifest his assent and the maker

(a) knows or believes that the assertion is not in accord with the facts, or

(b) does not have the confidence that he states or implies in the truth of the assertion, or

(c) knows that he does not have the basis that he states or implies for the assertion.

1 *Restatement (Second) of Contracts,* § 162. The plaintiff claims that the description was as accurate as he felt it could be without inviting theft. By making such

an assertion, to some extent plaintiff purposely mislead DHL about the contents of the shipment. However, plaintiff also claims that he was unaware that DHL would not ship cash. In considering the requirement to view the record in a light most favorable to the non-moving party, *Tew,* 407 A.2d at 242, the Court is simply unwilling at this point to rule that the misrepresentation was fraudulent as a matter of law.

▮ The alternative factor to be considered under the second element is, if the misrepresentation is not fraudulent, is it, nevertheless, material.

(2) A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so.

1 *Restatement (Second) of Contracts,* § 162. "The materiality of a misrepresentation is determined from the maker,...." 1 *Restatement (Second) of Contracts,* § 162, comment c. This would seem to indicate that the maker of the misrepresentation would have to know to some extent that the statement was likely to induce assent. As stated above, plaintiff claims he was unaware that DHL would not accept cash for shipment. It is an elementary principle of contract law that a person will be bound by the contents of an agreement that he purposely signs but fails to inform himself of the contents of that agreement. 13 Am.Jur.2d, *Carriers* § 276 (1964); *see Thomas v. Trans World Airlines, Inc.,* 457 F.2d 1053 (3rd Cir., 1972). However, this rule applies only "where the means of information are within his immediate reach". 13 Am.Jur.2d, *Carriers* § 276 (1964). On the other hand, where a shipper who makes frequent shipments, has blank bills of lading in his possession and fills the bill out himself and then presents the bill to the carrier for signature, "the law charges him with the knowledge of the contents and he ought not to be permitted to say that he did not assent to the terms". *Id.*

In the instant case, plaintiff had in his possession airbills which are bills of lading.

*See Black's Law Dictionary,* 64 (5th ed. 1979). Further, plaintiff had frequently utilized DHL's services for two years prior to the shipment at issue in this case. There is nothing contained in the record that indicates the Airway bill form changed in those two years. Based on this long-time use of DHL's services, plaintiff cannot now be heard to complain that he was unaware of the terms and conditions contained on the Airway bill. Therefore, plaintiff is bound by those terms and conditions, as he signed the Airway bill.

Given that plaintiff must be charged with the knowledge that DHL does not accept cash for delivery, the misrepresentation becomes material. It is material because "the maker [plaintiff] knows that for some special reason it is likely to induce the particular recipient [DHL] to manifest his assent." 1 *Restatement (Second) of Contracts,* § 162, comment c. Put simply, the plaintiff had reason to know DHL would not accept cash and describing the shipment as otherwise, he induced DHL to enter into a contract to which it would not otherwise assent to.

The third element to be considered is whether the misrepresentation induced DHL to enter into the contract. "A misrepresentation induces a party's manifestation of assent if it substantially contributes to his decision to manifest his assent." 1 *Restatement (Second) of Contracts,* § 167. It is not necessary that this party's reliance on the misrepresentation be "the sole or even the predominant factor in influencing his conduct". *Id.,* at comment a. "It is assumed, in absence of facts showing the contrary, that the recipient attached importance to the truth of the misrepresentation if it was material, but not if it was immaterial". *Id.* at comment b.

In the instant case, the misrepresentation was material. Further, there is nothing in the record to indicate that DHL did not attach importance to the misrepresentation. In fact, it is just the opposite. As noted before, the shipper's signature block of the Airway bill contains the following statement, "I warrant that all details given herein are true and correct", plus para-

graph 2 on the back of the bill, relating to giving an accurate description of the contents, reflects DHL's concern as to the accuracy of the description of the shipment, as does the blank the shipper uses to describe the contents. Therefore, it is clear that the misrepresentation was a substantial factor in DHL's decision to enter into the contracts at issue.

■■■ The fourth element to be considered is whether DHL's reliance on the misrepresentation is reasonable. A misrepresentation will have no legal effect unless the recipient's reliance is justified. *Norton,* 443 A.2d at 6; 1 *Restatement (Second) of Contracts,* § 164, comment d. Prior to shipping and giving the envelope to DHL, plaintiff twice inquired as to the availability of $15,000 worth of insurance. This would indicate that the documents' value belied the description on the Airway bill. DHL argues that plaintiff attempts to impose a duty to inspect every envelope. This may or may not be plaintiff's intent but that is of no moment. What is important is the fact that DHL does reserve the right to inspect the envelopes it accepts for delivery. DHL would not reserve such a right if it did not believe that at some point or on some occasion it would want to check the contents because it has reason to believe the description is inaccurate. DHL realizes that it is not always reasonable to rely on the description supplied by a shipper. Where that point or occasion falls is a question of fact that should be left to the trier of fact. Further, because the misrepresentation at issue underlies both the contract of carriage and the contract of insurance, the analysis is the same as to both. Therefore, the Court finds that a material issue of fact exists as to the reasonableness of DHL's reliance on the description supplied by plaintiff.

Since all four elements have not been established as a matter of law, granting summary judgment would not be proper.

IV

DHL argues in the alternative that even if the contracts are not voidable as a matter of law, the liability as to the contract of

carriage should be limited to $100. DHL's argument is grounded in the so-called "release value doctrine" on which a carrier can properly limit its liability.

 Federal law rather than state law governs the enforceability of a limit of liability provision. *First Pennsylvania Bank v. Eastern Airlines, Inc.*, 731 F.2d 1113 (3rd Cir., 1984). Under the "release value doctrine" an air carrier can properly limit its liability to an agreed value of the goods, provided that the shipper has the option of obtaining higher coverage and knowingly chooses to pay a lower price for lesser coverage. *First Pennsylvania Bank*, 731 F.2d at 1116–1118; *Uniden Corp. of America v. Federal Exp. Corp.*, M.D.Pa., 642 F.Supp. 263, 265 (1986). Therefore, DHL is correct that the issue is one of federal law and, further, correctly sets out the test as to the "release value doctrine". However, the cases cited by DHL have a similar fact not applicable in the instant case. In all the cases cited by DHL, the shipper did not exercise the option to purchase additional coverage for the shipment. In the case at bar, plaintiff elected the additional coverage offered. Therefore, this Court cannot rule that, as a matter of law, DHL's liability is limited to $100 pursuant to the "release value doctrine".

 As to plaintiff's argument that the "reasonable communicativeness test" should be applied to determine the validity of DHL's limit of liability, the argument must fail. This test applies to passenger tickets of common carriers. *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1363 (9th Cir., 1987); *see The Majestic*, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897); *Barbachym v. Costa Line, Inc.*, 713 F.2d 216 (6th Cir., 1983); *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861 (1st Cir., 1983); *Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11 (2d Cir., 1968). Plaintiff has not cited a single case expanding the application of the "reasonable communicativeness test" beyond the realm of passenger tickets. That may be for good reason which includes the possibility of dealing with airline customers who are infrequent fliers or who may be bound by the same rules regardless of airline versus a frequent user of an air delivery service, such as this plaintiff, who has a range of services available with different rules. Therefore, this test will not be applied to bills of lading such as the Airway bill at issue in this case with this plaintiff.

Based on the foregoing, the motion of DHL Airways, Inc. for summary judgment is hereby DENIED.