## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TROY VENTURES, LLC, )
SECURENETMD, LLC, )
THINKSECURENET, LLC, and )
DEMARVAREPAIR LLC, )
  )
       Plaintiffs, )
  )
   v. )    C.A. No. N23C-01-183 PAW
  )
MARK KOSLOSKI, )
  )
       Defendant. )

Submitted: January 17, 2025
Decided: April 21, 2025

## **MEMORANDUM OPINION**

*Upon consideration of Plaintiffs' Partial Motion for Summary Judgment;*

## **GRANTED.**

*Upon consideration of Defendant's Motion for Partial Summary Judgment*;

## **DENIED, in part and GRANTED, in part.**

Daniel McAllister, Esq., of McAllister Firm LLC, *Attorney for Plaintiffs.*

Daniel Herr, Esq., of the Law Office of Daniel C. Herr LLC, *Attorney for Defendant.*

**WINSTON, J.**

## I.    INTRODUCTION

Plaintiffs Troy Ventures LLC; SecureNetMD, LLC; ThinkSecureNet, LLC; and DemarvaRepair LLC (collectively, "SecureNet" or "Plaintiffs") initiated this litigation against a former employee, Defendant Mark Kosloski ("Kosloski") for breach of contract (or, in the alternative, promissory estoppel and unjust enrichment). Kosloski counterclaimed against SecureNet, alleging SecureNet withheld his commission and final paycheck in violation of the parties' employment contract and New Jersey wage payment law.

For the following reasons, the Court **GRANTS** Plaintiffs' Partial Motion for Summary Judgment as to Plaintiffs' Counts I and II and **GRANTS** Kosloski's Motion for Partial Summary Judgment as to Plaintiffs' Counts III and IV (for promissory estoppel and unjust enrichment). The Court **DENIES** Kosloski's motion as to Plaintiffs' Count II and Kosloski's Counterclaim Count II.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.    RELEVANT FACTS

On or about September 14, 2020, Kosloski and Plaintiffs entered into a contract governing Kosloski's employment with Plaintiffs (the "Employment Agreement").[1]  Under the Employment Agreement, the parties agreed that "[i]f

---

[1] Complaint (hereinafter "Compl.") ¶ 6; *see* Compl., Ex. A (hereinafter "Employment Agreement") (D.I. 1).

2

[Kosloski] leaves without providing 45 days written notice, [Kosloski] expressly agrees to pay [Plaintiffs] $5,000.00 in liquidated damages plus any other damages available under this agreement and other legal remedies."[2] The agreement also stated that "[Kosloski] will indemnify and hold [Plaintiffs] harmless from all costs (including reasonable attorneys['] fees), damages, and liabilities [Plaintiffs] incur[] as a result of [Kosloski's] breach of any provision of this Agreement."[3]

On the same day, the parties entered another contract—the Employee Commission Agreement—in which SecureNet agreed to provide a 6% commission for new sales generated by Kosloski and a 2% commission for team supervised sales.[4] The Employee Commission Agreement also provided that commission would be paid to Kosloski on the second pay of each month and that the commission payouts "shall continue for as long as [SecureNet] continues a relationship with the client and as long as [Kosloski] continues his … employment with the company."[5] Finally, the Employee Commission Agreement also stated that "[i]t is at

---

[2] Employment Agreement ¶ 2.c.

[3] Employment Agreement ¶ 7.

[4] Def.'s Ans. and Countercl., Ex. A (hereinafter "Employee Commission Agreement") at 1 (D.I. 6).

[5] *Id*.

[SecureNet's] discretion if final commission will be paid after the termination of employment."[6]

Approximately four months later, Kosloski and Plaintiffs entered into another contract reflecting the parties' agreement to jointly defend against actual or threatened litigation by Kosloski's former employer, and the Company agreed to pay Defense Costs (the "Employee Repayment Agreement").[7] The Employee Repayment Agreement defined "the Company" as the Plaintiffs SecureNetMD, ThinkSecureNet, and Troy Ventures, and "Employee" as Kosloski.[8] "Defense Costs" were defined as:

> Defense Costs. The Company and Employee have agreed to enter a joint defense arrangement with counsel of the Company's choosing. For so long as Employee remains employed with the Company and such joint defense arrangement remains in place, the Company agrees to pay all reasonable attorney's fees incurred in defending the Claims against Employee (the "Defense Costs").[9]

The Employment Repayment Agreement included the following section regarding repayment:

> Repayment of Defense Costs. (a) If, within five (5) years after the Employee's first date of employment with the Company, which was September 14, 2020, (i) Employee voluntarily terminates or gives notice of his intention to voluntarily

---

[6] *Id.* at 2.

[7] Compl. ¶ 11; *see* Compl., Ex. B (hereinafter "Employee Repayment Agreement").

[8] *See* Employee Repayment Agreement.

[9] *Id.* ¶ 1.

terminate Employee's employment with the company, or (ii) the Company terminates Employee's employment for Cause (as defined herein) (each, a "Repayment Event"), Employee hereby agrees that Employee shall repay the Defense Costs to the Company in full within thirty (30) days of Employee's last date of employment with the Company.[10]

There was also a provision allowing SecureNet to withhold Kosloski's final paycheck to offset repayment of the Defense Costs if a Repayment Event arose. The provision stated:

> Deduction from Final Paycheck; Offset of Other Amounts. In addition to any remedies available to the Company hereunder or otherwise by law, if a Repayment Event occurs and Employee has not repaid the Defense Costs in full by the date on which his final paycheck is payable, Employee hereby authorizes the Company to withhold his final paycheck as partial repayment of the Defense Costs. Employee further acknowledges and agrees that any additional amounts owed by the Company to Employee following termination of Employment may be reduced by the amount of any portion of the Defense Costs not yet repaid by Employee as of the date such amount becomes payable to Employee.[11]

Under the Employee Repayment Agreement, SecureNet conditionally paid defense fees for defending against litigation in California brought by Kosloski's former employer, Quake Global, Inc. ("Quake"), against Kosloski and SecureNet.[12]

---

[10] *Id.* ¶ 2.

[11] *Id.* ¶ 4.

[12] Compl. ¶ 17 ("In connection with the [Employee Repayment Agreement], Plaintiffs incurred on Defendant's behalf Defense Costs totaling $239,558.63."); *see also* D.I. 29, Ex. B (Complaint in *Quake Global, Inc. v. Mark Kosloski, et al.,* C.A.

On February 16, 2023, Kosloski sent an email to Jack Berberian, SecureNet's principal, and Kristen Jackson, the Director of Human Resources and Accounting, which stated, "Regretfully, I intend to resign from Secure[N]et at the end of this week" (the "Resignation Email").[13] In his Resignation Email, Kosloski provided the following bases: "I am surprised that after a week and half, the company hasn't extended a counteroffer to retain me. I wanted SecureNet to have the opportunity to match a competitive and reasonable offer. … Furthermore, we discussed my frustration with the commission plan."[14] Kosloski shared the following frustrations with his commission plan: (1) he was expected to close double the sales compared to his other team members; (2) his commission rate was lower than other rates within the company; (3) unpaid commissions; and (4) he was not given notice that exclusions would apply to "direct sales."[15]

In response, that same day, Jackson sent a letter to Kosloski advising that Kosloski was responsible for repayment of Defense Costs under the Employee Repayment Agreement (the "Repayment Letter").[16] Kosloski responded that he did

No. 37-2020-00040730-CU-BC-CTL, filed in the Superior Court of the State of California for the County of San Diego, Central Division).

[13] Pls.' Partial Mot. for Summ. J., Ex. 1 at 2 (D.I. 25).

[14] Pls.' Partial Mot. for Summ. J., Ex. 1 at 2.

[15] *Id.*

[16] Pls.' Partial Mot. for Summ. J., Ex. 1 at 1.

not authorize deductions or withholding from his final paycheck and asserted that no outstanding sum was owed to Plaintiffs.[17]  Kosloski also requested that his final paycheck include the unpaid commissions owed to him.[18]  SecureNet withheld $10,038.49 from Kosloski's final paycheck as "partial repayment" of the Defense Costs.[19]

At his deposition, Kosloski was questioned about his state of mind when he sent the Resignation Email.  Kosloski was asked: "So when you wrote this email, what were you saying in your mind as far as when you intended to resign?  It was the end of the following week?"[20]  Kosloski responded: "I didn't actually have the intent to resign, I was hoping to create urgency in a response from them and to receive a counteroffer for continued employment.  That was my intent."[21]

Kosloski also testified that he received a notice of termination email one week after sending his Resignation Email.[22]  Kolsoski acknowledged receiving the

---

[17] *Id*.

[18] *Id*.

[19] Compl. ¶¶ 19, 40.

[20] Pls.' Partial Mot. for Summ. J., Ex. 3 ("Kosloski Dep.") 83:3-6.

[21] Kosloski Dep. 83:7-12.

[22] Kosloski Dep. 84:9-15.  Kosloski clarified that this notice was distinct from the Repayment Letter, stating that he had received "an email from [the Director of Human Resources and Accounting] saying that [Kosloski] was terminated" which was sent approximately one week after February 16.  *See* Kosloski Dep. 84:15-23.

Repayment Letter, which referred to his resignation;[23] however, he did not view his employment as being terminated at that time, because: (1) the Repayment Letter did not "explicitly direct [Kosloski] that [his] employment was terminated on the 16th"[24] and (2) Kosloski "did not provide a formal resignation."[25]

## B. PROCEDURAL HISTORY

In an effort to obtain his withheld paycheck, Kosloski filed a complaint with the New Jersey Department of Labor claiming Plaintiffs failed to pay him wages in violation of the New Jersey Wage Payment Law ("NJWPL").[26] A virtual hearing was held on January 22, 2024, and the New Jersey Department of Labor determined it had no jurisdiction over Kosloski's wage claims.[27]

Subsequently, SecureNet brought this action against Kosloski for: (1) breach of the Employment Agreement;[28] (2) breach of the Employee Repayment

---

[23] Kosloski Dep. 85:4-15.

[24] Kosloski Dep. 85:16-22.

[25] Kosloski Dep. 86:1-2.

[26] Pls.' Ans. Br. in Opp'n to Def.'s Mot. for Partial Summ. J. at 5 (D.I. 29).

[27] Pls.' Ans. Br. in Opp'n to Def.'s Mot. for Partial Summ. J., Ex E.

[28] Compl. ¶¶ 20-29 ("Count I").

Agreement;[29] (3) promissory estoppel;[30] and (4) unjust enrichment.[31]   Kosloski counterclaimed for: (1) failure to pay earned commissions in violation of the NJWPL;[32] (2) withholding wages in violation of the NJWPL;[33] and (3) breach of the Employment Agreement and Employee Commission Agreement.[34]

SecureNet moves for partial summary judgment in their favor under Superior Court Rule 56 as to Counts I and II of their Complaint.[35]  Kosloski moves for partial summary judgment in his favor regarding SecureNet's Counts II, III, and IV and Kosloski's Counterclaim Count II.[36]

---

[29] Compl. ¶¶ 30-41 ("Count II").

[30] Compl. ¶¶ 42-49 ("Count III").  Promissory estoppel is pled as an alternative to Count II, should the Court find that the parties did not create a valid and binding contract in the form of the Employee Repayment Agreement.

[31] Compl. ¶¶ 50-54 ("Count IV").  Unjust enrichment is also pled as an alternative count, should the Court find that the parties did not create a valid and binding contract in the form of the Employee Repayment Agreement.

[32] Def.'s Ans. and Countercl., Countercl. Against All Pls. ¶¶ 8-10 ("Counterclaim Count I").

[33] Def.'s Ans. and Countercl., Countercl. Against All Pls. ¶¶ 11-13 ("Counterclaim Count II").

[34] Def.'s Ans. and Countercl., Countercl. Against All Pls. ¶¶ 14-16 ("Counterclaim Count III").

[35] Pls.' Partial Mot. for Summ. J.

[36] Op. Br. in Support of Def.'s Mot. for Partial Summ. J. (D.I. 26).  Neither party has moved for the Court to grant summary judgment on Kosloski's Counterclaim Counts I and III.  This Opinion only addresses SecureNet's Counts I-IV and Kosloski's Counterclaim Count II.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate "when the record shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law."[37]  The moving party bears the burden of demonstrating the undisputed facts entitle it to judgment as a matter of law.[38]  When the moving party sustains the initial burden of showing the nonexistence of any material issues of fact, the burden shifts to the non-moving party to substantiate its adverse claim by showing that there are material issues of fact in dispute.[39]

Where there is a material fact in dispute, or if it seems desirable to inquire more thoroughly into the facts to clarify the application of the law, summary judgment is inappropriate.[40]  Similarly, where issues of fact are based on the credibility of a witness, the Court will not grant summary judgment.[41]

---

[37] Super. Ct. Civ. R. 56(c).

[38] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[39] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995) (citing *Moore*, 405 A.2d 679, 680).

[40] *Ocwen Loan Servicing, LLC v. HSBC Bank USA*, 2014 WL 3058230, at *2 (Del. Super. June 30, 2014) (citing *Tew v. Sun Oil Co.*, 407 A.2d 240, 242 (Del. Super. 1979)).

[41] *Id*. (citing *Block Fin. Corp. v. Inisoft Corp.*, 2006 WL 3240010, at *3 (Del. Super. Oct. 30, 2006)).

"[C]ross-motions for summary judgment are not the procedural equivalent of a stipulation for a decision."[42] The mere presence of cross-motions for summary judgment "does not act *per se* as a concession" that there are no material facts in dispute.[43] Rule 56 permits the Court to deem cross motions for summary judgment "to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions" only if the parties "have not presented argument" on the existence of a material factual issue.[44] In this case, the parties have presented such argument. Accordingly, the Court will evaluate each motion independently to determine whether material factual issues exist.[45]

## IV. ANALYSIS

### A. THERE IS NO DISPUTE OF MATERIAL FACT, AND PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR AS TO BREACH OF THE EMPLOYMENT AGREEMENT.

SecureNet moves for summary judgment on Plaintiffs' Count I for breach of the Employment Agreement. Plaintiffs posit that they are entitled to judgment in

---

[42] *Torrent Pharma, Inc. v. Priority Healthcare Distribution, Inc.*, 2022 WL 3272421, at *5 (Del. Super. Aug. 11, 2022) (quoting *Empire of Am. Relocation Servs., Inc. v. Com. Credit Co.*, 551 A.2d 433, 435 (Del. 1988)).

[43] *Id*. (citing *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997)).

[44] *Id*. (citing Del. Super. Ct. Civ. R. 56(h)).

[45] *Id*. (citing *Cont'l Airlines Corp. v. Am. Gen. Corp.*, 575 A.2d 1160, 1164 n.5 (Del. 1990)).

their favor as a matter of law because there is no genuine issue of material fact.[46] In support of their position, SecureNet alleges it is undisputed that Kosloski is bound by the Employment Agreement and violated that agreement by voluntarily terminating his employment via the Resignation Email.[47]

Kosloski admits that he signed and entered the Employment Agreement;[48] he, however, states that he did not resign.[49] Instead, he argues that his resignation constitutes a constructive discharge by SecureNet because SecureNet failed to pay him at least $19,652.13 of his commission.[50] Kosloski also argues that Plaintiffs materially breached the Employee Commission Agreement by failing to pay him that amount, which, he asserts, relieves him of his obligations under the Employment Agreement.[51]

---

[46] Pls.' Partial Mot. for Summ. J. ¶ 1.

[47] Pls.' Partial Mot. for Summ. J. ¶ 9.

[48] Def.'s Ans. and Countercl. ¶ 6.

[49] Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 5-6 (D.I. 30).

[50] Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 5-6. Kosloski initially calculated his damages to be $10,038.49 of unpaid commission. *See* Def.'s Ans. and Countercl. ¶ 19. Following Plaintiffs' production of discovery, Kosloski calculated his damages to be $19,652.13 of unpaid commissions allegedly earned from January 2021 to February 2022. *See* Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 5. At oral argument, Kosloski clarified that he had calculated at that point that at least $20,000 of commissions were not paid to him, with the potential for additional damages to be proved at trial.

[51] Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 6.

Finally, Kosloski argues that, even if the Court finds he did resign *and* construes the Employment Agreement and Employee Commission Agreement separately, he is still not bound under the Employment Agreement because: (1) Plaintiffs breached the implied covenant of good faith and fair dealing;[52] and (2) the Employment Agreement contains an unlawful liquidated damages clause.[53]

### 1. THERE IS NO MERIT TO KOSLOSKI'S ARGUMENT THAT HE WAS CONSTRUCTIVELY DISCHARGED.

The record demonstrates that Kosloski voluntarily resigned from his position.[54] An employee who resigns rather than being terminated may have a claim for constructive discharge if the employer's conduct forced them to resign.[55]

---

[52] Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 5, n.1.

[53] Def.'s Ans. and Countercl., Affirmative Defenses ¶ 5.

[54] Pls.' Partial Mot. for Summ. J., Ex. 1. Without any support, Kosloski contends that there is a factual dispute as to whether he resigned or was terminated. *See* Op. Br. in Support of Def.'s Mot. for Partial Summ. J. at 5. Separately, at his deposition, Kosloski testified that he was terminated by SecureNet one week after sending the Resignation Email. Kosloski Dep. 84:15-23. Kosloski, however, did not raise this argument on summary judgment. Even if considered properly raised, Kosloski provided no evidence to support this allegation. Hence, there is no merit to Kosloski's contention that he was terminated by SecureNet on a later date. There is no factual dispute that Kosloski resigned. The Resignation Email plainly states an intent to resign. No reasonable jury would read "I intend to resign" and find that Kosloski's Resignation Email is anything other than notice of Kosloski's resignation, especially considering Kosloski's offer to make himself available for any transitional meetings. Likewise, no reasonable jury would find that Kosloski's resignation was contingent upon a subsequent formal resignation.

[55] *Rizzitiello v. McDonald's Corp.*, 868 A.2d 825, 832 (Del. 2005) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) ("Under the constructive discharge doctrine, an employee's reasonable decision to resign because of

Constructive discharge claims assume that the employee was not terminated.[56] These claims are predicated on the concept that an employer has made the work environment so intolerable as to leave the employee with no choice but to resign.[57] To establish a constructive discharge, an employee must show "working conditions so intolerable that a *reasonable person* would have felt compelled to resign."[58]

Relying on a separate agreement, Kosloski contends that SecureNet's failure to pay commission owed to him under the Employee Commission Agreement establishes an inference that his working conditions were intolerable such that he had no choice but to resign.[59] In support of his position, Kosloski cites to the Court's holding in *Conger v. Legg Mason, Inc.*[60] *Conger* is distinguishable. There, the Court held that failure to pay the employee four quarters' worth of distributions in the minimum amount of $100,000—totaling at least $400,000—amounted to

---

unendurable working conditions is assimilated to a formal discharge for remedial purposes.").

[56] *Lipson v. Anesthesia Services, P.A.*, 790 A.2d 1261, 1280 (Del. Super. 2001).

[57] *Id*.

[58] *Rizzitiello v. McDonald's Corp.*, 868 A.2d at 832 (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004)) (emphasis added).

[59] Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 6.

[60] Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 6.; 2011 WL 5301787 (Del. Super. July 21, 2011).

constructive discharge.[61] Importantly, in *Conger*, the employee's distributions represented *two-thirds* of his annual compensation.[62]

At the time Kosloski resigned, Kosloski alleged that Plaintiffs had failed to pay him $10,038.49 of unpaid commission.[63] Under the Employment Agreement, Kosloski received $100,000 annual base salary in addition to his commission.[64] Here, unlike in *Conger*, Kosloski's unpaid commission represents less than ten percent of Kosloski's annual compensation. Also, unlike the employee in *Conger*, Kosloski cannot show that the failure to pay less than $11,000 in earned commission rose to the level of "working conditions so intolerable" required to establish a constructive discharge. Accordingly, Kosloski's situation does not rise to the level required to establish constructive discharge.

---

[61] *Conger*, 2011 WL 5301787, at *1.

[62] *Conger*, 2011 WL 5301787, at *1 (noting that "Plaintiff's guaranteed annual compensation package was $600,000, a $200,000 as a base salary with $400,000 in minimum quarterly payments.").

[63] *See* Def.'s Ans. and Countercl. ¶ 19. After SecureNet's production of discovery, Kosloski calculated his damages to be significantly higher, alleging SecureNet withheld nearly $20,000 in unpaid commission. *See* Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 5. However, at the time of his resignation, Kosloski only believed Plaintiffs had failed to pay him $10,038.49 of the commission due to him. Def.'s Ans. and Countercl. ¶ 19.

[64] Employment Agreement ¶ 3 ("Compensation").

Further, in the Resignation Email, Kosloski indicated that his decision to resign was also based on the denial of possible *future* commission increases.[65] Kosloski also testified that he hoped his Resignation Email would result in a counteroffer of continued employment with SecureNet.[66] Specifically, Kosloski requested that SecureNet increase his commission percentages to be "in line" with other sales professionals.[67] The denial of possible future promotions or raises is legally insufficient to support a claim of constructive discharge.[68] Thus, for this additional basis, the doctrine of constructive discharge does not apply to Kosloski's resignation.

Kosloski fails to establish that a reasonable person in his situation would have been compelled to resign; nor does Kosloski show that he himself was left with "no choice but to resign," especially considering his deposition testimony that he had no intent to do so at the time he emailed Plaintiffs.[69] Accordingly, there is no merit to Kosloski's affirmative defense that he was not bound under the Employment Agreement because he was constructively discharged.

---

[65] Pls.' Partial Mot. for Summ. J., Ex. 1.

[66] Kosloski Dep. 83:7-12.

[67] Kosloski Dep. 56:18-57:3.

[68] *Rizzitiello v. McDonald's Corp.*, 868 A.2d at 832.

[69] Kosloski Dep. 83:7-12.

16

**2.** **THERE IS NO MERIT TO KOSLOSKI'S ARGUMENT THAT HE WAS NOT BOUND UNDER THE EMPLOYMENT AGREEMENT BECAUSE OF PLAINTIFFS' ALLEGED BREACH OF THE EMPLOYMENT COMMISSION AGREEMENT.**

Kosloski next contends that Plaintiffs breached the Employment Commission Agreement by failing to pay him his outstanding commissions. Kosloski argues that as the Employee Commission Agreement and the Employment Agreement were signed the same day, the agreements were intended to operate together.[70] Therefore, he contends, a material breach of the Employee Commission Agreement would relieve him of his obligations under the Employment Agreement.

Kosloski is correct that when the parties have executed separate documents on the same day covering the same time period and intend these documents to "operate as two halves of the same business transaction," then the Court must treat them as one contract.[71] Plaintiffs, however, dispute that there was intent for the two documents to act as one contract.[72] Plaintiffs specifically cite to the fact that the two contracts cover different subject matters and do not reference one another as further

---

[70] Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 4-5.

[71] *E.I. duPont de Nemours and Co., Inc. v. Shell Oil Co.,* 498 A.2d 1108, 1115 (Del. 1985).

[72] Pls.' Reply in Further Support of their Partial Mot. for Summ. J. ¶ 2 (D.I. 32).

evidence that they did not intend for the Employment Agreement and the Employee Commission Agreement to act as "two halves of the same business transaction."[73]

As part of governing Kosloski's employment, the Employment Agreement generally addresses compensation and explains that it is within SecureNet's discretion to award bonuses, commission, and other forms of compensation.[74] The Employee Commission Agreement, on the other hand, sets forth Kosloski's specific commission structure through the discretionary grant provided in the Employment Agreement.[75] The Employment Agreement's compensation-related discretion and the Employee Commission Agreement's discretionary issuance of commission evidences the relatedness between the two agreements, but does not suggest the agreements are two parts of a whole. Accordingly, the parties did not intend for the agreements to operate together, especially considering SecureNet's authority under

---

[73] *Id.* ¶ 3. ("There is no indication that the parties intended the agreements to be a single large agreement, or that a breach of one would constitute a breach of the other. To the contrary, the fact that Kosloski's commission compensation was set forth in a separate agreement evinces an intent to make this agreement separate from the Employment Agreement.")

[74] Employment Agreement ¶ 3(c).

[75] *See* Employee Commission Agreement at 1.

the Employment Agreement to modify the Employee Commission Agreement at their discretion.[76]

Any alleged breach of the Employee Commission Agreement does not relieve Kosloski of obligations under the Employment Agreement. Therefore, there is no merit to Kosloski's argument that he was not bound under the Employment Agreement because of SecureNet's alleged breach of the Employee Commission Agreement.

### 3. THERE IS NO MERIT TO KOSLOSKI'S ARGUMENT THAT HE WAS NOT BOUND UNDER THE EMPLOYMENT AGREEMENT BECAUSE OF AN ALLEGED BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

Additionally, Kosloski argues that even if the Court construes the Employment Agreement and Employee Commission Agreement separately, Plaintiffs still breached the implied covenant of good faith and fair dealing.[77] Without any support, Kosloski specifically contends that Plaintiffs' attempt to recover liquidated damages is in bad faith, and, therefore, a prior material breach of the implied covenant within the Employment Agreement.[78]

---

[76] The Employee Commission Agreement also expressly provides that it is at Plaintiffs' discretion if final commission will be paid after termination of employment. Employee Commission Agreement at 2.

[77] Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 5, n.1.

[78] *Id.*

The implied covenant's purpose is to supply terms which the parties overlooked while negotiating an agreement.[79] Although an implied covenant of good faith and fair dealing exists in every contract, our courts have been reluctant to impose obligations under that implied covenant.[80] A court may supply terms under the implied covenant only when "it is clear from the contract that the parties would have agreed to that term had they thought to negotiate the matter."[81]

The Employment Agreement contains specific provisions to address Kosloski's early departure from employment.[82] Specifically, the Employment Agreement provides: "Employee may terminate this Agreement *for any reason* upon 45 days written notice to Company."[83] Moreover, the Employment Agreement expressly outlines that the "Employer also may award to Employee such bonuses, commissions, and other forms of compensation as Employer shall deem appropriate."[84] Thus, as the express provisions of the Employment Agreement cover the conduct at issue, the implied covenant does not apply here.[85] This Court will not

---

[79] *Kent County Equipment, Inc. v. Jones Motor Group, Inc*., 2009 WL 737782, at \*5 (Del. Super. Mar. 20, 2009).

[80] *Id*.

[81] *Id*.

[82] Employment Agreement ¶ 2 ("Term").

[83] Employment Agreement ¶ 2(c) (emphasis added).

[84] Employment Agreement ¶ 3 ("Compensation").

[85] *Id*.

conclude under the guise of the implied covenant that Kosloski's express contractual rights have somehow been abridged. Therefore, there is no merit to Kosloski's contention that he was not bound under the Employment Agreement because of an alleged breach of the implied covenant.

### 4. THERE IS NO MERIT TO KOSLOSKI'S ARGUMENT THAT THE LIQUIDATED DAMAGES CLAUSE WITHIN THE EMPLOYMENT AGREEMENT IS A PENALTY CLAUSE.

Finally, Kosloski contends that the Employment Agreement contains an unlawful liquidated damages clause.[86] Liquidated damages provisions embody "the parties' best guess of the amount of injury that would be sustained in a contractual breach" and serve to make "certain and definite damages which would otherwise be uncertain and not susceptible of proof."[87] By contrast, a "penalty" is a sum inserted into a contract that serves as a punishment for default, rather than a measure of compensation for its breach.[88] "Delaware's fundamental public policy of contractual enforcement is not absolute and will kneel to competing public policies of overriding

---

[86] Def.'s Ans. and Countercl., Affirmative Defenses ¶ 5. Kosloski raised this argument as an affirmative defense in his Answer.

[87] *Unbound Partners Limited Partnership v. Invoy Holdings Inc.*, 251 A.3d 1016, 1032 (Del. Super. 2021).

[88] *Delaware Bay Surgical Services, P.C. v. Swier*, 900 A.2d 646, 650 (Del. 2006).

21

concern."[89]  For example, "[t]he inclusion of penalties disguised as liquidated damages provisions presents one such constraint on the freedom of contract."[90]

The record here shows that $5,000 was a reasonable forecast, rationally related and not unconscionable, of the amount of injury that would be sustained by a contractual breach by Kosloski.[91]  Kosloski submits no evidence otherwise.  Thus, the provision in question is a true liquidated damages provision which must be enforced according to its own terms.  There is no merit to Kosloski's contention that the Employment Agreement contains an unlawful liquidated damages clause.

*     *     *

Plaintiffs are entitled to judgment in their favor as a matter of law because there is no genuine issue of material fact as to Count I.  Kosloski is bound by the Employment Agreement and violated that agreement by voluntarily terminating his employment without providing 45 days written notice.  Kosloski's arguments of constructive discharge, breach of the Employee Commission Agreement, and breach of the implied covenant do not apply to the facts at hand and do not relieve him of

---

[89] *Unbound Partners Limited Partnership*, 251 A.3d at 1032.

[90] *Id*.

[91] *See Kold, LLC v. Croman*, 2014 WL 7008431, at *5-6 (Del. Super. Nov. 25, 2014) (holding a liquidated damages provision requiring an employee to pay $35,000 to the employer in the event of a breach was a reasonable estimate of the employer's potential losses and did not constitute a penalty).

his obligations under the Employment Agreement. Further, the liquidated damages provision within the Employment Agreement is not an unlawful penalty.

Accordingly, the Court **GRANTS** Plaintiffs' Partial Motion for Summary Judgment as to Count I.

**B.** **THERE IS NO DISPUTE OF MATERIAL FACT, AND PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR AS TO BREACH OF THE EMPLOYEE REPAYMENT AGREEMENT.**

Both parties move for summary judgment in their favor on Plaintiffs' Count II for breach of the Employee Repayment Agreement. Plaintiffs assert that there is no genuine dispute of material fact because it is "undisputed" that (1) the Employee Repayment Agreement is enforceable and (2) Kosloski voluntarily terminated his employment within five years of his start date.[92] As discussed previously, Kosloski contends factual disputes exist regarding whether he resigned or was terminated.[93] Separately, Kosloski argues there is no genuine issue of material fact because the

---

[92] Pls.' Partial Mot. for Summ. J. ¶¶ 9-10.

[93] *See* Op. Br. in Support of Def.'s Mot. for Partial Summ. J. at 5. As previously determined, no factual dispute exists. *See* discussion *supra* Section IV.A.1, n.55. Under the Employee Repayment Agreement, Kosloski's repayment obligation was triggered when he gave notice of his *intention* to voluntarily terminate his employment. Employee Repayment Agreement ¶ 2(a). In the Resignation Email, Kosloski expressly stated that "Regretfully, I *intend* to resign from Secure[N]et at the end of this week." Pls.' Partial Mot. for Summ. J., Ex. 1 at 2 (emphasis added). Kosloski's Resignation Email triggered his repayment obligation under Paragraph 2(a).

agreement is void: (1) under New Jersey law;[94] (2) due to a breach of the implied covenant of good faith and fair dealing by the Plaintiffs;[95] (3) under the doctrine of frustration of purpose;[96] and (4) because Plaintiffs cannot prove their damages under the Employee Repayment Agreement to a "reasonable certainty."[97]

### 1. THERE IS NO MERIT TO KOSLOSKI'S ARGUMENT THAT HE WAS NOT BOUND UNDER THE EMPLOYEE REPAYMENT AGREEMENT BECAUSE THE EMPLOYEE REPAYMENT AGREEMENT WAS VOID AND UNENFORCEABLE AS A VIOLATION OF THE NJWPL.

Kosloski first argues that he was not bound by the Employee Repayment Agreement because the agreement is void and unenforceable as a violation of the NJWPL.[98] The NJWPL, *N.J.S.A.* 34:11-4.1 to 4.14, and specifically, *N.J.S.A.* 34:11-4.7, prohibits an employer from, among other actions, entering into an agreement with its employee withholding or reducing wages already earned.[99]

Section 34:11-4.4 states: "No employer may withhold or divert any portion of an employee's wages unless: a) the employer is required or empowered to do so by New Jersey or United States law ...." The NJWPL defines wages as: "[D]irect monetary compensation for labor or services rendered by an employee, where the

---

[94] Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 6.

[95] *Id.*

[96] *Id.*

[97] Op. Br. in Support of Def.'s Mot. for Partial Summ. J at 12.

[98] *Id.* at 10-11.

[99] *Minoia v. Kushner*, 839 A.2d 90, 92 (N.J. Super. 2004).

24

amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." The NJWPL further declares agreements entered in violation of the NJWPL to be null and void as against public policy.[100]

In response, Plaintiffs assert that the choice of law provision within the Employee Repayment Agreement is effective and that the contract should be interpreted under Delaware law. Under Delaware's Wage Payment and Collection Act ("WPCA"), an employer may withhold wages when there are reasonable grounds for a dispute between the employer and employee arising out of the employment contract; in other words, when an employee leaves owing an employment-related debt to his employer, the employer may deduct the employee's debt from final wages.[101]

When faced with a choice-of-law issue, Delaware applies the Second Restatement's most significant relationship test to find which state's substantive law applies to the case.[102] The Court looks at three factors for the choice-of-law analysis: (i) determining if the parties made an effective choice of law through their contract;

---

[100] *Kennedy v. Weichert Co*., 2021 WL 2774844, at *2 (N.J. Super. July 2, 2021).

[101] 19 *Del. C*. § 1103(b).

[102] *Kilian v. International Society of Interdisciplinary Engineers LLC*, 2023 WL 234566, at *9 (Del. Super. Jan. 18, 2023).

(ii) if not, determining if there is an actual conflict between the laws of the different states each party urges should apply; (iii) if so, analyzing which state has the most significant relationship.[103] If the Court, however, determines the parties made an effective choice of law, the Court's analysis does not end there. Under the Restatement (Second) of Conflict of Laws § 187 (the "Restatement"),

> If the parties to a contract have selected the law of a particular jurisdiction to govern their agreement, then "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied," unless either:
>
> (a)    the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b)    application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.[104]

Thus, under the Restatement, the parties may have agreed that the contract is governed by Delaware law, but there could be another state that has a "materially

---

[103] *Id.*

[104] *Focus Financial Partners, LLC v. Holsopple*, 241 A.3d 784, 803-04 (Del. Ch. 2020) (citing Restatement (Second) of Conflict of Laws §187 (1971)).

26

greater interest than the chosen state in the determination of [a] particular issue …" within that contract.[105]

Here, it is undisputed that the parties made an effective choice of law through the Employee Repayment Agreement such that the contract as a whole will be governed under Delaware law.[106] As a result, this contract must be interpreted under Delaware law unless Kosloski can demonstrate all of the following the State of New Jersey: (1) has a materially greater interest in this issue than Delaware; (2) has a fundamental policy that would be violated by the application of Delaware law; and (3) would be the state of applicable law in the absence of a choice of law provision.[107] Kosloski argues New Jersey has a materially greater interest than Delaware in the determination of the particular issue of whether the Plaintiffs are permitted to withhold Kosloski's final paycheck in the event of a Repayment Event.

Even if Kosloski could establish that New Jersey has a materially greater interest, he cannot satisfy Section 187(2)(b)'s third prong. To make the three-part showing required under Section 187(2)(b), Kosloski must demonstrate that New

---

[105] *Id*. at 806 ("Each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states.").

[106] *See* Employee Repayment Agreement ¶ 7; *see also* Def.'s Reply Br. at 2 (D.I. 33).

[107] Restatement Section 187(2)(b). Kosloski does not challenge choice of law under Section 187(2)(a), and he could not do so successfully. Plaintiffs are incorporated in Delaware, giving the State a "substantial relationship" to Plaintiffs. *See* Restatement Section 187 cmt. f.

27

Jersey would be the default state in the absence of an effective choice of law. Kosloski fails to do so.

Section 187(2)(b) directs courts to consider Section 188's factors in determining which state's laws would apply absent an effective choice of law provision. Section 188's factors include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."[108] Importantly, a court should consider the contacts' relative importance to the issue at hand, and should not perform a simple quantitative analysis by adding up which forum has more contacts.[109]

The Employee Repayment Agreement concerned threatened litigation "against the Company and Employee that implicate the Company's employment of Employee."[110] Thus, the subject matter of the agreement—SecureNet's conditional

---

[108] Restatement (Second) Conflicts of Laws § 188(2).

[109] *GTE Mobilnet Inc. v. Nehalem Cellular, Inc.*, 1994 WL 116194, at *3 (Del. Ch. Mar. 17, 1994) (citing *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 48 (Del. Super. 1991)).

[110] Employee Repayment Agreement, preamble.

payment of the joint defense fees—specifically addressed litigation brought by Quake in California.[111]

Plaintiffs are Delaware businesses with their principal places of business located in Delaware.[112] Under the Employee Repayment Agreement, Kosloski agreed to repay the Defense Costs to the Plaintiffs if he voluntarily resigned within 5 years after his start date of September 14, 2020.[113] While Kosloski disputes how much time he worked in Delaware, Kosloski worked at the physical office location in Delaware at least once a week.[114] Kosloski also worked remotely from his residence in New Jersey.[115] SecureNet's promised performance involved the payment of fees from a Delaware business to a California law firm.[116]

Under this backdrop, New Jersey would not be the state of applicable law in the absence of a choice of law provision by the parties as: (1) the places of

---

[111] *See* D.I. 29, Ex. B (Complaint in *Quake Global, Inc. v. Mark Kosloski, et al.,* C.A. No. 37-2020-00040730-CU-BC-CTL, filed in the Superior Court of the State of California for the County of San Diego, Central Division).

[112] Pls.' Ans. Br. in Opp'n to Def.'s Mot. for Partial Summ. J. at 7. Kosloski contends that SecureNetMD, LLC, registered itself to conduct business within New Jersey as a foreign limited liability company; however, Kosloski does not dispute that the State of Delaware is the domicile, place of incorporation, and principal place of business of SecureNetMD, LLC. *See* Op. Br. in Support of Def.'s Mot. for Partial Summ. J. at 4, 8.

[113] *See* Employee Repayment Agreement ¶ 2.

[114] Pls.' Ans. Br. in Opp'n to Def.'s Mot. for Partial Summ. J. at 7.

[115] Op. Br. in Support of Def.'s Motion for Partial Summ. J. at 4.

[116] *See* Employee Repayment Agreement; *see also* D.I. 29, Ex. B.

performance for the parties were SecureNet's principal place of business in Delaware and Kosloski's residence in New Jersey;[117] (2) the location of the subject matter was California;[118] and (3) three of the four parties to the agreement—Troy Ventures, LLC; SecureNetMD, LLC; and ThinkSecureNet, LLC—were companies organized and domiciled under the laws of the State of Delaware.[119] The place of contracting and place of negotiation are unknown, so these factors are neutral.[120] As a result, the Employee Repayment Agreement must be interpreted under Delaware law.[121]

**2.** **THERE IS NO MERIT TO KOSLOSKI'S ARGUMENT THAT HE WAS NOT BOUND UNDER THE EMPLOYEE REPAYMENT AGREEMENT BECAUSE OF AN ALLEGED BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.**

Again, without any support, Kosloski contends that Plaintiffs breached the implied covenant by failing to pay him his earned commissions.[122] As explained

---

[117] Pls.' Ans. Br. in Opp'n to Def.'s Mot. for Partial Summ. J. at 7.

[118] D.I. 29, Ex. B.

[119] Employment Agreement, preamble.

[120] Kosloski asserts he does not remember the place of contracting or negotiation for the Employee Repayment Agreement. Op. Br. in Support of Def.'s Mot. for Partial Summ. J. at 8.

[121] Failure to satisfy the default-state element is enough to end the analysis under Section 182(b)(2). *See, e.g., Wind Point*, 2020 WL 5054791, at *19 (Del. Super. Aug. 17, 2020) (holding a party must demonstrate clearly default state, fundamental public policy, and materially greater interest elements to invoke the Section 187(2)(b) exception) (citation omitted).

[122] Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 6.

above, the implied covenant does not apply where the express provisions of a contract cover the conduct at issue, so a party invoking the implied covenant must plead a "gap" for which the covenant might supply a term.[123] Kosloski, however, has not pleaded a gap.[124] Furthermore, the Employee Repayment Agreement authorizes SecureNet to withhold Kosloski's final paycheck as partial payment of the Defense Costs.[125] As a result, Kosloski's implied covenant argument fails.

### 3. THERE IS NO MERIT TO KOSLOSKI'S ARGUMENT THAT HE WAS NOT BOUND UNDER THE EMPLOYEE REPAYMENT AGREEMENT UNDER THE DOCTRINE OF FRUSTRATION OF PURPOSE.

Kosloski further argues that Plaintiffs frustrated the Employee Repayment Agreement by failing to instruct its California defense counsel to separately account for SecureNet's attorneys' fees."[126] A contracting party's obligations may be discharged by the frustration of purpose doctrine when his "principal purpose is substantially frustrated without his fault by the occurrence of any event the non-occurrence of which was a basic assumption on which the contract was made."[127]

---

[123] *Bandera Master Fund LP v. Boardwalk Pipeline Partners, LP*, 2019 WL 4927053, at *22 (Del. Ch. Oct. 7, 2019).

[124] *See* Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 6.

[125] Employee Repayment Agreement ¶ 4.

[126] Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 6.

[127] *Bardy Diagnostics, Inc. v. Hill-Rom, Inc.*, 2021 WL 2886188, at *40 (Del. Ch. July 9, 2021) (quoting *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,* 901 A.2d 106, 113 (Del. 2006)).

The frustration of purpose doctrine is "very difficult to invoke"[128] and "is generally limited to cases where a virtually cataclysmic, wholly unforeseeable event renders the contract valueless to one party."[129] In essence, the frustration must be so severe that it cannot be fairly regarded as within the risks that the party assumed under the contract.[130]

The primary purpose of the Employee Repayment Agreement was to allow SecureNet to recover the Defense Costs related to the Quake litigation, if Kosloski did not continue to work for SecureNet. Kosloski contends that because the "Defense Costs" within the Agreement were defined as "all reasonable attorneys['] fees incurred in defending the Claims against [Kosloski]," the purpose of the Agreement was frustrated when Plaintiffs failed to instruct their California Counsel to separately account for SecureNetMD's fees.[131] Kosloski fails to demonstrate how the principal purpose of the Employee Repayment Agreement—to allow SecureNet

---

[128] *Andor Pharmaceuticals, LLC v. Lannett Company*, 2024 WL 1855112, at *14 (Del. Super. Apr. 29, 2024) (citing *Promise Easy Ltd. v. Moon*, 2023 WL 5152173, at *19 (Del. Ch. Aug. 10, 2023)).

[129] *Id*. (citing *McReynolds v. Trilantic Capital Partners IV L.P.*, 2010 WL 3721865, at *4 (Del. Ch. Sept. 23, 2010)).

[130] *Bardy Diagnostics*, 2021 WL 2886188, at *40 (quoting Restatement (Second) of Conts § 265 cmt. a).

[131] Def.'s Reply Br. at 5.

to recover funds spent defending Kosloski from litigation—would be frustrated based on SecureNet's failure to allocate the defense costs.

Thus, the doctrine of frustration of purpose does not apply to invalidate the Employee Repayment Agreement for SecureNet's failure to keep separate records of the costs associated with defending the company and Kosloski.

### 4. KOSLOSKI'S ARGUMENT THAT SECURENET CANNOT ESTABLISH DAMAGES WITH THE REASONABLE CERTAINTY REQUIRED TO PREVAIL DOES NOT PRECLUDE SUMMARY JUDGMENT.

Kosloski further contends that SecureNet cannot establish damages with the reasonable certainty required to prevail.[132]  Kosloski specifically argues that because SecureNet failed to keep separate records of the costs associated with defending the company and Kosloski, SecureNet cannot establish the amount of damages they are owed with reasonable certainty.[133]  However, at this stage, SecureNet seeks summary judgment only as to liability.[134]

Accordingly, there is no merit to Kosloski's assertion that summary judgment cannot be granted in SecureNet's favor because SecureNet cannot establish damages with the reasonable certainty required to prevail.  Because SecureNet only seeks

---

[132] Op. Br. in Support of Def.'s Mot. for Partial Summ. J. at 12.

[133] *Id*. at 11-12.

[134] Pls.' Partial Mot. for Summ. J. ¶ 10.

summary judgment as to liability at this time, whether damages can be estimated with reasonable certainty is not at issue and does not preclude summary judgment.[135]

\* \* \*

The Employee Repayment Agreement, including the particular issue of wage payment, must be construed under Delaware law; the implied covenant and the doctrine of frustration of purpose do not apply; and Plaintiffs need not prove their damages with reasonable certainty at this stage. Therefore, the Employee Repayment Agreement is not void, the Employee Repayment Agreement is a valid, binding contract, and Kosloski's Resignation Email triggered his repayment obligation under Paragraph 2(a). Kosloski's Motion for Partial Summary Judgment is **DENIED** as to Plaintiffs' Count II. Plaintiffs' Partial Motion for Summary Judgment is **GRANTED** as to Plaintiffs' Count II.

### C. THERE IS NO DISPUTE OF MATERIAL FACT, AND KOSLOSKI IS ENTITLED TO SUMMARY JUDGMENT IN HIS FAVOR AS TO PLAINTIFFS' CLAIMS FOR PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT.

Kosloski moves for summary judgment in his favor on Plaintiffs' Count III for promissory estoppel and Plaintiffs' Count IV for unjust enrichment. Kosloski primarily argues that Plaintiffs cannot replace a defective contract with a claim for

---

[135] Del. Super. Civ. Rule 56(c) ("A summary judgment…may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.").

34

promissory estoppel or unjust enrichment.[136] SecureNet responds that promissory estoppel and unjust enrichment are properly pled as alternatives to Count II, should the Court find that the parties did not create a valid and binding contract in the form of the Employee Repayment Agreement.[137]

A claim for promissory estoppel requires a plaintiff to show the following: (1) a promise was made; (2) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (3) the promisee reasonably relied on the promise and took action to his detriment; and (4) injustice can be avoided only by enforcement of the promise.[138] Promissory estoppel does not apply, however, where a fully integrated, enforceable contract governs the promise at issue.[139]

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[140] The elements are: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment;

---

[136] Op. Br. in Support of Def.'s Mot. for Partial Summ. J. at 13.

[137] Pls.' Ans. Br. in Opp'n to Def.'s Mot. for Partial Summ. J. at 15-16.

[138] *SIGA Technologies, Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 347-48 (Del. 2013).

[139] *Id.* at 348.

[140] *JanCo FS 2, LLC v. ISS Facility Services, Inc.*, 2024 WL 4002825, at *20 (Del. Super. Aug. 30, 2024).

and (4) the absence of justification.[141]  Like promissory estoppel, this cause of action is not available if a contract governs the relationship between the parties that gives rise to the claim.[142]

Here, Plaintiffs only plead promissory estoppel and unjust enrichment in the alternative to their claim for breach of the Employee Repayment Agreement, because the parties dispute the contract's ongoing enforceability.[143]  At oral argument, both parties acknowledged that the claims pled in the alternative are ripe for summary judgment should the Court find that the contract at issue is valid and enforceable.[144]

For the reasons explained above, the Employee Repayment Agreement is a valid and enforceable contract; accordingly, Kosloski's Motion for Partial Summary Judgment is **GRANTED** as to Plaintiffs' Counts III and IV.

### D. KOSLOSKI IS NOT ENTITLED TO SUMMARY JUDGMENT IN HIS FAVOR AS TO HIS COUNTERCLAIM COUNT II.

Kosloski moves for summary judgment in his favor on his Counterclaim Count II for SecureNet's failure to provide his last paycheck in violation of the

---

[141] *Id.*

[142] *Id.*

[143] Pls.' Ans. Br. in Opp'n to Def.'s Mot. for Partial Summ. J. at 15-16.

[144] *See* Pls.' Ans. Br. in Opp'n to Def.'s Mot. for Partial Summ. J. at 16. (acknowledging that Plaintiffs' claims pled in the alternative "should stand *so long as Kosloski maintains that the [Employee Repayment Agreement] is void and the Court has not issued a final ruling on that issue*") (emphasis added).

NJWPL.[145]   An employer's unilateral decision not to pay earned compensation constitutes a material breach of an employment agreement.[146]

Plaintiffs withheld Kosloski's final paycheck under a provision agreed to by both parties in the Employee Repayment Agreement,[147] which is governed under Delaware law.[148]   Thus, it cannot be said that the Plaintiffs' act of withholding Kosloski's final paycheck was a "unilateral" decision or a violation of the NJWPL.[149]

There is no genuine dispute of material fact as to Kosloski's claim that SecureNet violated the NJWPL by withholding his final paycheck.  The Court can determine at this stage that: (1) New Jersey law does not apply to the particular issue

---

[145] Def.'s. Mot. for Partial Summ. J. at 14.

[146] *Dickinson Med. Group, P.A. v. Foote*, 1989 WL 40965, at *7 (Del. Super. Mar. 23, 1989); *see also Shutzman v. Gill,* 154 A.2d 226, 230 (Del. Ch. 1959) ("If the plaintiff was guilty of any material breach of his employment contract, he may not enforce its provisions against the defendant.").

[147] Employee Repayment Agreement ¶ 4 ("Deduction from Final Paycheck; Offset of Other Amounts").

[148] *See* discussion *supra* Section IV.B.1.

[149] Kosloski's contentions regarding Plaintiffs' withholding of his last paycheck must be considered separately from his allegations that Plaintiffs withheld his earned commission throughout his employment.  The ability to withhold Kosloski's final paycheck was expressly granted to Plaintiffs under the Employee Repayment Agreement.  Kosloski's Counterclaim Count II exclusively concerns the fact that "Plaintiffs withheld Kosloski's final paycheck in violation of [the NJWPL]."  This opinion does not address the allegations in Kosloski's Count I.

of wage payment within the Employee Repayment Agreement;[150] and (2) SecureNet was permitted to withhold Kosloski's final paycheck under the terms of the Employee Repayment Agreement.  Accordingly, the Court **DENIES** Kosloski's Motion for Partial Summary Judgment to Kosloski's Counterclaim Count II.

## V.    CONCLUSION

The Court **GRANTS** Plaintiffs' Partial Motion for Summary Judgment as to Plaintiffs' Counts I and II and **GRANTS** Kosloski's Motion for Partial Summary Judgment as to Plaintiffs' Counts III and IV (for promissory estoppel and unjust enrichment).  The Court **DENIES** Kosloski's Motion for Partial Summary Judgment as to Plaintiffs' Count II and Kosloski's Counterclaim Count II.

**IT IS SO ORDERED.**

/s/ Patricia A. Winston
**Patricia A. Winston, Judge**

---

[150] *See* discussion *supra* Section IV.B.1.